103 P.3d 365

**Jacob E. HOOPAI, Appellant–Appellee**

**v.**

**CIVIL SERVICE COMMISSION, City and County of Honolulu; Department of Civil Service, City and County of Honolulu; and Emergency Services Department, City and County of Honolulu, Appellees-appellants**

**and**

**United Public Workers, AFSCME, Local 464, AFL–CIO, Party–in–Interest–Appellant.**

**In the Matter of the Arbitration Between United Public Workers, AFSCME, Local 646, AFL–CIO, Union**

**and**

**City and County of Honolulu, Department of Health, Emergency Medical Services (Grievance of Derrick Young; MR96–29), Employer.**

Nos. 23883, 23912.

Supreme Court of Hawai'i.

Dec. 21, 2004.

---

Lori Ann K.K. Sunakoda, Deputy Corporation Counsel, City and County of Honolulu, on the briefs, for appellees-appellants.

Herbert R. Takahashi and Rebecca Covert, Honolulu, (Takahashi, Masui & Vasconcellos), on the briefs, for party-in-interest-appellant.

Colleen Hanabusa, on the briefs, for appellant-appellee.

LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.; with MOON, C.J., concurring separately.

**Opinion of the Court by ACOBA, J.**

We hold in this consolidated appeal in Civil No. 99-0-3248 and Special Proceeding No. 00-1-0090 (S.P. No. 00-1-90), (1) that the general prohibition in Hawai'i Revised Statutes (HRS) § 89-9(d) (1993) against a public employer and the exclusive representative of a collective bargaining unit agreeing to a "proposal ... inconsistent with merit principles" is subject to that statute's provisions allowing for, *inter alia*, negotiation of promotion and demotion procedures in a collective bargaining agreement and a grievance process for violation thereof, (2) that HRS § 76-1 (Supp.1999), Revised Charter of Honolulu (RCH) §§ 6-302, 6-306, 6-308, and Rules of the Civil Service Commission (RCSC) §§ 13-2 and 13-3 do not conflict with HRS § 89-9(d),[1] (3) that in the instant case, the grievance process initiated by Party-in-Interest-Appellant United Public Workers, AFSCME, Local 646, AFL-CIO (UPW) pursuant to its collective bargaining agreement with Appellee-Appellant City and County of Honolulu (the City) was proper, (4)

that the dispute as to the "demotion" of Appellant-Appellee Jacob E. Hoopai (Hoopai) was properly processed under the collective bargaining agreement grievance procedure; and (5) Hoopai has failed to establish a violation of his due process claim.

Because on the foregoing premises the circuit court of the first circuit (the court) was wrong in ruling that Appellee-Appellant Civil Service Commission (the Commission) had jurisdiction of Hoopai's complaint involving his demotion, we vacate the court's October 25, 2000 judgment remanding the case to the Commission in Civil No. 99-3248 and the court's April 11, 2000 order denying without prejudice the UPW's motion to intervene in S.P. No. 00-1-90, and remand the case to the court with instructions to grant the UPW's motion and enter judgment for the Commission, the City, Appellees-Appellants Department of Civil Service of the City (the Department) and the Emergency Services Department of the City (ESD) [hereinafter collectively, Employers],[2] and UPW.

Employers challenge the May 16, 2000 findings of fact (findings), conclusions of law (conclusions) and order of the court and appeal from the court's October 25, 2000 judgment in favor of Hoopai.[3] UPW challenges the aforesaid May 16, 2000 findings, conclusions and order and appeals from (1) the April 11, 2000 order denying, without prejudice, UPW's motion to intervene and (2) the said October 25, 2000 judgment.[4]

**I.**

**A.**

The facts in the present appeal ostensibly are not disputed.[5] The pertinent facts are set forth in certain of the court's enumerated findings and the evidence adduced as follows.

---

1. The text of these laws are set forth *infra*.

2. Because the City, Department, ESD, and Commission all filed the same briefs, they are collectively referred to herein as the Employers.

3. The Honorable Allene Suemori presided.

4. Hoopai moved to strike portions of UPW's opening brief with respect to the October 25, 2000 judgment. On May 10, 2001, this court

denied the motion without prejudice to Hoopai raising the issue in an amended answering brief.

5. Although Employers state that the "facts of this appeal are not in dispute," they do in fact challenge one of the court's findings of fact, namely finding 23. *See infra*.

1. [Hoopai] is an employee of Appellee [City], [ESD].

2. [Commission] is an agency of the [City], duly created under the [RCH] and the applicable Civil Service laws of the State of Hawai'i.

3. [City] is a body politic created under the provision of the RCH, the Constitution of the State of Hawai'i and applicable provisions of the [HRS].

4. [ESD] of the [City] is duly created under the RCH.

5. On or about June 16, 1995, [Hoopai] was promoted from the position of Mobile Emergency Care Specialist ("MECS I") to EMS Field Operations Supervisor ("FOS").

6. During the time he served as FOS, [Hoopai] received only "Excellent" evaluations.

7. [Hoopai] successfully completed his probationary period.

8. [Hoopai] was made permanent in his position on December 16, 1995.

9. After [Hoopai's] July [sic] 16, 1995 promotion, [UPW] filed a grievance on behalf of a non-selectee. This was subsequently resolved by way of a Settlement Agreement. [Hoopai] continued to serve n[sic] the position of FOS.

10. In compliance with the Settlement Agreement, a second promotion process was initiated and [Hoopai] was again "selected." [Hoopai] continued, uninterrupted, to serve as FOS since his selection in June of 1995.

11. [Hoopai's] selection was again grieved by a non-selectee [Grievant Derrick Young (Grievant)]. . . .

On December 23, 1996, UPW initiated the grievance process. On that same day, UPW informed Hoopai by letter of the grievance procedure and its potential impact.[6] The grievance was processed on behalf of Grievant and conducted pursuant to the collective bargaining agreement between UPW and the City, entitled "Institutional, Health, and Correctional Workers Bargaining Unit 10 Agreement."[7] On October 20 and 30, 1997, the arbitration[8] was conducted with the UPW, ESD and the City agreeing that the issue presented to the arbitrator was, "Did the [E]mployer violate the contract when it failed to select the Grievant for the position of [FOS], and if so, what is the appropriate remedy?" During the hearings, both Hoopai and Grievant were called as witnesses.

The remainder of the court's findings, relating to the arbitration and the subsequent appeal by Hoopai to the Commission, states as follows:

12. On February 10, 1998, the Arbitrator ruled that the selection process was still flawed and ordered the promotion set aside [hereinafter "arbitration decision"].

13. In his decision, the Arbitrator explicitly stated that he could not order the promotion of the Grievant because that would substitute his evaluation of supervi-

---

**6.** The letter submitted by UPW to Hoopai before the arbitration hearing is not disputed by Hoopai or Employers. The letter stated in part:

This is to inform you that a grievance has been filed on behalf of the senior employee who was not selected by the Employer for promotion to FOS in which you were selected instead. It *is the responsibility of the UPW to represent the senior employee who was not selected. This letter and a copy of the grievance shall serve as notice to you that in the event the remedy to the grievance is granted, it will directly affect you.* (Emphasis added.)

**7.** Employers contend that the second grievance filed by UPW was submitted "pursuant to the collective bargaining agreement." Employers do not cite to the collective bargaining agreement, or include a copy of the agreement. However, in the record on appeal, portions of the collective bargaining agreement, effective July 1, 1995–June 30, 1999, are attached to UPW's motion to intervene and portions of the collective bargaining agreement, effective July 1, 1993–June 30, 1995, are attached to UPW's motion to confirm. Hoopai does not contest that the second grievance was submitted to arbitration pursuant to the collective bargaining agreement. The Commission, in its decision and order dated July 29, 1999, found that this second grievance was submitted "to an arbitrator for a final and binding decision pursuant to the collective bargaining agreement then in effect." Inasmuch as the court consolidated the cases involving the motion to intervene and the motion to confirm, we consider all the documents in the record.

**8.** Arbitrator Harold Masumoto conducted the arbitration proceedings.

sory experience for that of the employer and it would be improper.

14. [Hoopai] was subsequently demoted on April 15, 1998 effective February 25, 1998, after holding this position for almost 3 years.

15. On March 18, 1998, Hoopai filed a Petition of Appeal with the Commission.

16. Hoopai raised issues, including, but not limited to, the following: the violation of the merit principles, the preemption of the Civil Service Laws, the violation of Civil Service Rules, and improper demotion.

17. Hoopai appealed the demotion alleging improper acts [9] of [ESD] issued on April 15, 1998, effective February 24, 1998.

18. On May 25, 1999, [ESD's] Motion to Dismiss Appeal filed on May 17, 1999 was heard. The Motion alleged that the Commission lacked jurisdiction to hear the appeal.

19. At the hearing on the Motion to Dismiss, [Hoopai] requested that the City negotiator of collective bargaining agreements be allowed to testify on his behalf.

20. The basis of such request was to confirm that [City] does in fact believe that collective bargaining preempts civil service.

21. The Commission denied the request.

22. [Hoopai] challenged the right of Mr. Halvorson, attorney for the Commission, to participate in the evidentiary hearing and his assistance in the decision making.

23. The Commission stated on the record that Mr. Halvorson's questions do affect their decision making on the case.

24. Mr. Halvorson is not authorized to participate as a Commissioner in [Commission] hearings.

25. The Decision and Order was issued on July 27, 1999.

(Footnote added.)

The Commission's July 27, 1999 Decision and Order (Commission's order) dismissed Hoopai's appeal for lack of jurisdiction. The pertinent conclusions of the Commission state as follows:

1. [HRS § 76–1] . . . states that . . . *the policy and purpose of Chapter 76, HRS, is to establish a system of personnel administration based on merit principles . . . .*

2. *[HRS § 76–1] does not confer jurisdiction to hear appeals on any civil service commission* of any jurisdiction. This section only prescribes the policy and principles that should be applied by the Commission once it has jurisdiction.

. . . .

4. [RCH § 6–308] provides as follows: *Any person aggrieved by any action of the director . . . or who has been . . . demoted . . . may appeal* to the [Commission] for redress, pursuant to its rules and regulations.

5. The Commission has jurisdiction to hear the appeals from **disciplinary actions** pursuant to . . . [RCSC § 2–34(a) ], from any action of the director or appointing authority pursuant to [RCSC] § 2–34(b), and from grievances unsatisfactorily resolved at step 3 pursuant to [RCSC] § 13–3.

6. The *demotion of [Hoopai] was not a disciplinary action and is therefore not within the jurisdiction of the Commission pursuant to [RCSC] § 2–34(a).*

7. There is *no authority to appeal the arbitrator's decision to the Commission.* Only the actions of the director or an appointing authority may be appealed pursuant to [RCSC] § 2–34(b). In this case the director was performing a non-discretionary ministerial act in complying with the order of the arbitrator. The director was not acting on her own authority and there was no appealable action by the director as contemplated under [RCSC] § 2–

---

9. Although not expressly stated, the "improper acts of [ESD] issued April 15, 1998" appears to refer to Hoopai's demotion on April 15, 1998, which became effective February 25, 1998. *See supra,* Finding 14.

34(b). Moreover, in order for the Commission to find that the director had violated a civil service rule would [sic] entail an examination of the merits of the arbitration decision. The *Commission has no authority to do this. Jurisdiction over arbitration decisions and awards clearly falls to the exclusive jurisdiction of the courts pursuant to [HRS] Chapter 658.*

8. The use of the civil service grievance procedure pursuant to [RCSC] § 13-3 is *prohibited by [RCSC] §§ 13-2(b) and 13-3 for complaints over matters under the various collective bargaining agreements.*

9. *[HRS] § 89-10(d) specifies that if there is a conflict between a collective bargaining agreement and a civil service of [sic] other personnel rule or regulation, the terms of the agreement shall prevail.* In addition, [HRS] § 89-19 specifies that if there is a conflict between another statute and [HRS] Chapter 89 concerning the same subject matter, [HRS] Chapter 89 shall take precedence.

10. Despite these jurisdictional restrictions, [Hoopai] maintains that this preemption feature of [HRS] § 89-10(d) is modified by the proviso that *the terms of the collective bargaining agreement may not be inconsistent with [HRS] § 89-9(d) which in turn references the merit principles of [HRS] § 76-1.* Additionally, [Hoopai] points out that pursuant to the Hawai'i Supreme Court decision in *SHOPO v. Soc'y of [Prof'l] Journalists,* [83 Hawai'i 378, 927 P.2d 386 (1996)], the *collective bargaining agreement cannot preempt a statute which imposes a duty upon a public employer to perform when the subject matter of the other statute is not in conflict with [HRS] Chapter 89.* While this may be true, this still *does not convey jurisdiction over collective bargaining matters upon the Commission.* The Commission has no authority to review the scope of collective bargaining pursuant to [HRS] Chapter 89 regardless of whether there is a conflict between the collective bargaining agreement and [HRS] § 89-9(d) or whether the collective bargaining agreement conflicts with another statute. This falls within the purview of the Hawai'i Labor Relations Board or the courts.

11. Finally, even if [Hoopai] was correct in his claim that the Commission has some overarching duty to preserve merit principles, even when in conflict with a collective bargaining agreement, this Commission would still dismiss this appeal.

12. Contrary to the brief submitted by [Hoopai] wherein he avers that he "was demoted from a position he was **properly promoted** to ...," (emphasis added) the *arbitrator's decision clearly rests on the conclusion that [Hoopai's] promotion was **improper** under the collective bargaining agreement.* Whether the arbitrator was correct or not, and whether the promotion of [Hoopai] was proper or not, *necessarily requires a relitigation of the promotion decision.* More importantly, it *requires a determination of whether the decision by the arbitrator[,] that there has been a violation of the collective bargaining agreement[,] is in conflict with merit principles under [HRS] § 76-1.* This Commission has no jurisdiction to resolve conflicts between [HRS] Chapters 76 and 89. This too, must be left to the courts.

13. The Employer and [Hoopai's] exclusive bargaining representative agreed to settle this dispute through final and binding arbitration. *[Hoopai] was represented in this agreement by his exclusive bargaining representative and through such representation is a beneficiary of both the rights and responsibilities of that agreement.* If he has a quarrel with the terms of that agreement, including the dispute resolution mechanism, his complaint is with his representative and not the employer. Moreover, the forum for any quarrel between [Hoopai] and his union is clearly not this Commission.

(Emphases added.) (Boldfaced emphases in original.)

On August 26, 1999, in Civil No. 99-0-3248, Hoopai appealed to the court from the Commission's order, arguing that (1) the Commission violated HRS chapter 91 by improperly denying Hoopai's request for witnesses and denying him due process, (2) the Commission's decision was flawed due to the participation of its attorney in the decision

making process, and (3) the decision to dismiss Hoopai's agency appeal violated constitutional or statutory provisions, exceeded the agency's authority, was made upon unlawful procedures, was in error of law, was clearly erroneous, and was arbitrary and capricious.

On December 13, 1999, the court [10] heard oral argument and subsequently issued a minute order, which stated that the case was "reversed and remanded [with Hoopai's attorney] to submit proposed findings of fact and conclusions of law."

## B.

On February 23, 2000, in a separate and second proceeding, S.P. No. 00-1-90, the UPW filed a motion to confirm the arbitration decision (motion to confirm) [11] against the City and ESD, and attached a 1999 arbitration agreement between UPW and the City and the arbitrator's decision. The hearing on this motion to confirm was originally scheduled for March 14, 2000. On March 3, 2000, the City and ESD filed a statement of no opposition and a notice of non-appearance.

Prior to the hearing on the motion to confirm in S.P. No. 00-1-90, on March 13, 2000, the UPW, in Civil No. 99-0-3248, filed (1) a motion to consolidate Hoopai's appeal from the Commission's order and the special proceeding's motion to confirm (motion to consolidate) because of common questions of law or fact in Hoopai's appeal and UPW's motion to confirm the arbitration award, and (2) a motion to intervene in Civil No. 99-0-3248. In the motion to intervene, the UPW maintained that the Commission lacked "subject matter jurisdiction over the dispute." Attached to the motion to intervene was a

1999 collective bargaining agreement between the UPW and the City, the arbitration decision, and the grievances filed. The court [12] heard both motions on April 3, 2000.

On April 10, 2000, the motion to consolidate the cases was granted. The court reasoned that consolidation under Civil No. 99-0-3248 was appropriate because both cases "involve[d] a common question of law and fact warranting consolidation under Rule 42(a) of the Hawai'i Rules of Civil Procedure [ (HRCP) ]." On April 11, 2000, however, the court denied without prejudice UPW's motion to intervene on the ground that "the UPW will be able to request intervention at the [Commission]."

On April 11, 2000, the court [13] filed an order granting UPW's motion to confirm (confirmation order). The confirmation order provided as follows:

> [UPW's motion to confirm], having been filed on February 23, 2000, and having come on for hearing ... on April, 11, 2000, ... and Deputy Corporation Counsel ... having filed a statement of no opposition and notice of non appearance ..., and good cause appearing,

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the [arbitration decision] was issued in accordance with [HRS] §§ 658-8, 658-11, and 658-12. *Accordingly, the employer is hereby ordered to comply with the provisions set forth in the [arbitration decision].*

(Emphasis added.)

On May 16, 2000, the court [14] entered its order for the December 19, 1999 hearing

---

**10.** The Honorable Allene Suemori presided.

**11.** HRS § 658-8 (1993) empowers the court to confirm an arbitration award as follows:

> **Award; confirming award.** The award shall be in writing.... A copy of the award shall be served by the arbitrators on each of the other parties to the arbitration, personally or by registered or certified mail. *At any time within one year after the award is made and served, any party to the arbitration may apply* to the circuit court specified in the agreement, or if none is specified, *to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the*

> *court shall grant such an order, unless the award is vacated, modified, or corrected* as prescribed in sections 658-9 and 658-10.... [N]otice of the motion shall be served upon the adverse party, or the adverse party's attorney, as prescribed for service of notice of a motion in an action in the same court.
> (Emphases added.)

**12.** The Honorable Sabrina McKenna presided.

**13.** The Honorable Sabrina McKenna presided.

**14.** The Honorable Allene Suemori, having presided over the December 13, 1999 hearing issued this order.

conducted in Civil No. 99–0–3248. In addition to its aforementioned findings filed May 16, 2000, the court stated, in finding 27, that it had jurisdiction over Hoopai's appeal. The court also issued the following conclusions of law and order:

1. In order for an appeal from an agency's decision to be sustained, the appellant must meet his burden [pursuant to].... HRS § 91–14(g).[15] [Hoopai] has met his burden.

2. [Hoopai] was *denied his due process right by [the Commission] when it summarily dismissed [Hoopai's] appeal due to [the] Arbitrator's decision* of February 10, 1998.

3. [Hoopai] was promoted, successfully completed his probationary period with excellent ratings and was made permanent in his FOS position as of December 16, 1995.

4. *[Hoopai's] permanent status created a proprietary right in his promotion.*

5. [Hoopai] was demoted by the City's act of April 15, 1998.

6. [Hoopai] is *entitled to have the [Commission] hear his appeal as to whether he was improperly demoted, whether Civil Service Laws and Rules were violated[,] and whether the merit principles were ignored.*

THE COURT having entered the above [findings] and [conclusions] HEREBY ORDERS, ADJUDGES AND DECREES that

The Decision and Order of the [Commission], [City], entered on July 27, 1999 is reversed and remanded to the Commission and that a new hearing on [Hoopai's] Petition of Appeal be conducted in compliance with the applicable constitutional and statutory provisions.

(Emphases added.) On June 15, 2000, Employers filed a notice of appeal to this court. On September 25, 2000, this court issued an

order dismissing the appeal for lack of appellate jurisdiction.

Final judgment in Civil No. 99–0–3248 was entered on behalf of Hoopai on October 25, 2000. On October 31, 2001, the court in S.P. No. 00–1–90 entered a final judgment in favor of UPW pursuant to the confirmation order.[16] The final judgment confirming the arbitrator's award stated as follows:

Pursuant to the [confirmation order], Judgment is hereby entered in favor of UPW, AFSCME, Local 646, AFL–CIO and against the [City], the Department of Health, [and ESD] in the above entitled matter.

This final judgment resolves all claims raised by all parties in this case.

On November 13, 2000, UPW filed a notice of appeal to this court from (1) the court's October 25, 2000 judgment reversing and remanding the Commission's order, and (2) the court's April 11, 2000 order denying, without prejudice, UPW's motion to intervene. On November 22, 2000, Employers also filed a notice of appeal from the October 25, 2000 judgment reversing and remanding the Commission's order.

## II.

On appeal, Employers argue that the court erred in (1) impliedly ruling that the Commission had authority to hear Hoopai's appeal, (2) not considering the arbitrator's decision final and binding, (3) ruling that Hoopai was denied due process of law, and (4) finding that the counsel for the Commission affected the Commission's decision making on the case.

UPW argues that the court erred in (1) determining that the Commission had subject matter jurisdiction over a promotional dispute that was subject to arbitration under HRS chapter 89, (2) permitting a collateral attack upon a final and binding arbitration

---

15. The court quoted HRS § 91–14(g), which is quoted in full herein. *See infra.*

16. HRS § 658–12 (1993) authorizes entry of judgment upon the granting of orders confirming, modifying, or correcting arbitration awards as follows:

**Entry of Judgment.** Upon the granting of an order, confirming, modifying, or correcting an award, the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment. An appeal may be taken from such judgment as hereinafter set forth.

decision that was confirmed in accordance with HRS chapter 658, and (3) denying UPW's motion to intervene inasmuch as UPW was the exclusive representative that sought to uphold the arbitration decision in accordance with HRS chapter 89.

Hoopai argues that the court was correct in concluding that (1) Hoopai was denied his due process rights when his appeal was summarily dismissed by the Commission, (2) the RCH permits any person who is aggrieved by an action of the director of personnel or who has been demoted to appeal to the Commission, (3) promotional disputes are properly before the Commission because HRS chapter 89 does not take precedence over civil service laws, (4) the courts' preference for arbitration is irrelevant to the issue of Hoopai's Commission appeal, (5) Hoopai's due process rights were violated by the Commission's refusal to compel the testimony of witnesses to address the preemption argument, (6) the Commission's attorney should not participate in the Commission proceedings in the role of a hearings officer, and (7) the court correctly denied UPW's untimely motion to intervene.

## III.

■ " 'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision.' " *Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001) (quoting *Farmer v. Admin. Dir. of the Court*, 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000)) (brackets omitted). It is well settled that " '[i]n an appeal from a circuit court's review of an administrative decision, the appellate

court will utilize identical standards applied by the circuit court.' " *Price v. Zoning Bd. of Appeals*, 77 Hawai'i 168, 171, 883 P.2d 629, 632 (1994) (quoting *Mauna Kea Power Co. v. Bd. of Land & Natural Res.*, 76 Hawai'i 259, 264, 874 P.2d 1084, 1089 (1994)).

■ When a court reviews the decision of an administrative agency, HRS § 91–14(g) (1993)[17] governs. "[A]ppeals taken from findings set forth in decisions of the [agency] are reviewed under the clearly erroneous standard. Thus, [the] court considers whether such a finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Bocalbos v. Kapiolani Med. Ctr. for Women & Children*, 93 Hawai'i 116, 124, 997 P.2d 42, 50 (App. 2000) (citations, internal quotation marks, brackets, ellipses, and emphasis omitted).

■ On the other hand, "conclusions of law ... are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law." *Poe v. Hawai'i Labor Rels. Bd.*, 87 Hawai'i 191, 195, 953 P.2d 569, 573 (1998). "Hence, an agency's statutory interpretation is reviewed *de novo*." *Keanini v. Akiba*, 93 Hawai'i 75, 79, 996 P.2d 280, 284 (App.2000).

## IV.

As an initial matter, we consider whether this court has jurisdiction to hear UPW's appeal. The appeal was timely filed, and the appeal of the judgment is authorized by HRS § 641–1(a) (1993), which allows an appeal from the final judgment of the circuit court in a civil case. UPW appealed from the court's October 25, 2000 judgment, but it also

17. HRS § 91–14 entitled "Judicial review of contested cases," provides in part:
(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or order are:
(1) In violation of constitution or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

seeks review of the April 11, 2000 order denying its motion for intervention.

◼ Hoopai argues that the court correctly denied UPW's motion to intervene in his appeal of the Commission's order. Hoopai asserts that the motion to intervene was properly denied because it was "untimely" as it was filed three months after the minute order [18] of the court was issued. Inasmuch as the present appeal involves the underlying appeal of the Commission's order, Hoopai posits that he has not yet been "afforded the opportunity for his challenge to his demotion after he was unconditionally promoted." In this regard, Hoopai maintains that because the court denied UPW's motion to intervene without prejudice, UPW can raise its issues at the Commission proceedings upon remand, but "not here" before this court.

◼ An order denying an application for intervention under HRCP Rule 24 is a final appealable order under HRS § 641–1(a). *Baehr v. Miike*, 80 Hawai'i 341, 343–45, 910 P.2d 112, 114–16 (1996). The appealability of such an order is based upon the collateral order doctrine. *Moore's Federal Practice,* § 24.24[1] (3d ed.1999). The failure to take an immediate appeal from a collateral order does not preclude review of the order on appeal from a final judgment. *Kukui Nuts of Hawaii, Inc. v. Baird & Co., Inc.,* 7 Haw. App. 598, 617, 789 P.2d 501, 514 (1990) ("[W]here relief can be afforded from the terms of a collateral order upon appeal from the final judgment, the collateral order may be reviewed at that time, and the right to appeal the collateral order is not forfeited because it was not appealed from when it was entered.") Accordingly, UPW's failure to take an immediate appeal does not preclude this court's review of the order on appeal from the October 25, 2000 judgment, for UPW's appeal from the judgment can afford UPW relief [19] from the denial of intervention.

## V.

◼ In its opening brief, UPW argues that the court erred in denying its motion to intervene because its motion was timely under HRCP Rule 24, inasmuch as UPW "sought intervention promptly upon learning of Hoopai's challenge to the ... [Commission] decision on jurisdiction" and that no prejudice would have resulted from the "lapse of time." It relies upon two Hawai'i cases, *Ing v. Acceptance Ins. Co.,* 76 Hawai'i 266, 874 P.2d 1091 (1994), and *Blackfield Hawaii Corp. v. Travelodge Int'l, Inc.,* 3 Haw.App. 61, 641 P.2d 981 (1982).

Hoopai responds that the court correctly denied UPW's motion to intervene and therefore "UPW is only before this Court as to the order denying its Motion to Intervene." Hoopai argues that (1) UPW failed to intervene before the Commission, (2) its motion was untimely inasmuch as it filed its motion "3 months after the Minute Order of the ... court was entered," and (3) UPW "can properly raise its issues at [Commission] proceedings" as the court stated in its order denying the motion to intervene.

In its reply brief, UPW contends that Hoopai "misconstrues the purpose ... of UPW's intervention in these proceedings." It asserts that it filed its motion to intervene "solely for the purpose of challenging on appeal [the court's] jurisdictional determination[,]" and therefore, pursuant to *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), its motion, filed months before final judgment was entered, was timely.

◼ HRCP Rule 24 (2000) in relevant part states as to intervention as of right:

> (a) **Intervention of Right.** Upon *timely* application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) *when the applicant claims an interest relating to the property or transaction which is the subject of the action*

---

18. While mentioned by Hoopai, a minute order is not considered a part of the record on appeal. *Torres v. Torres*, 100 Hawai'i 397, 405 n. 6, 60 P.3d 798, 806 n. 6 (2002).

19. The final judgment can "afford UPW" relief, to the extent that this court's decision could result in a remand to the court or Commission, in which case UPW could be allowed to intervene.

*and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.*

(Emphases added.) An order denying a motion to intervene pursuant to HRCP Rule 24(a)(2) is reviewed under the right/wrong standard. *Ing*, 76 Hawai'i at 271, 874 P.2d at 1096. This court considers four factors in determining intervention as of right pursuant to HRCP Rule 24(a)(2): (1) "whether the application was timely"; (2) "whether the intervenor claimed an interest relating to the property or transaction which was the subject of the action"; (3) "whether the disposition of the action would, as a practical matter, impair or impede the intervenor's ability to protect that interest"; and (4) "whether the intervenor's interest was inadequately represented by the existing defendants." *Id.* (brackets omitted). In the instant matter, the court denied UPW's motion for intervention as of right for failure to satisfy the first and fourth factors.

At the hearing on the motion, the court stated that the motion "just is not timely" and that "with respect to the [m]otion to [i]ntervene as a matter of right, it appears . . . that the issues . . . sought to be raised by the UPW were already adequately raised by the . . . Commission and were denied by Judge Suemori." We conclude that the court erred in both determinations. First, with respect to timeliness, this court considers "the totality of the circumstances," paying particular attention to "the lapse of time" between the time when UPW "should have sought intervention and when it actually

did[,]" and the "prejudice caused to" Hoopai "by the lapse of time." *Id.*

UPW states, and Hoopai does not deny, that Hoopai did not notify UPW of his appeal to the Commission. UPW identifies February 16, 2000 as the time when it was informed of the court's ruling on Hoopai's appeal from the Commission's ruling and that it "took immediate action to protect the integrity of the arbitral determination" by filing its motion to confirm on February 23, 2000 and by filing its motion to intervene in Hoopai's case on March 13, 2000. Inasmuch as Hoopai does not contest the February 16, 2000 date as the date UPW had knowledge of Hoopai's appeal, and without more, we accept this date as the date UPW "should have sought intervention."

UPW filed its motion less than one month later. In its motion, it sought only reconsideration of the ruling remanding to the Commission. UPW's intervention would not have caused prejudicial delay in the disposition of the case because UPW would be addressing the court's ruling as to the Commission's jurisdiction. *See Blackfield*, 3 Haw.App. at 63, 641 P.2d at 983 (finding it "obvious on the record" that granting intervention would have prejudiced the parties because the would-be intervenor sought "to interject numerous other issues into the litigation," which would have led to "considerable delay" in the disposition of the case).

Final judgment in Civil No. 99-0-3248 had not been entered and was not entered until October 25, 2000. *See McDonald*, 432 U.S. at 395-96 (holding that the "critical inquiry" in "post-judgment intervention for the purpose of appeal" is "whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment").[20] This,

---

**20.** In *McDonald*, a United Airlines flight attendant filed a federal discrimination suit as a class action on behalf of herself and other United flight attendants who were discharged because of the airlines's no-marriage policy. 432 U.S. at 388, 97 S.Ct. 2464. The district court denied class certification, but then permitted twelve flight attendants to "intervene as additional parties plaintiff." *Id.* The flight attendants and United eventually settled and the district court entered a judgment of dismissal. *Id.* at 389, 97 S.Ct. 2464.

Eighteen days after the district court's final judgment, McDonald filed a motion to intervene for the purpose of appealing the court's adverse

class determination order. *Id.* at 390, 97 S.Ct. 2464. The district court denied her motion, noting that the case had been ongoing for five years. *Id.* at 390, 97 S.Ct. 2464. The circuit court reversed the district court's determination that McDonald's motion was untimely under Federal Rules of Civil Procedure Rule 24(b).

The Supreme Court granted United's petition for certiorari to consider the circuit court's ruling that McDonald's application for intervention was timely. *Id.* at 391, 97 S.Ct. 2464. The Court made special note of two facts. First, it recognized that McDonald's motion to intervene was for the "wholly different purpose" of "ob-

and the fact that UPW also filed a motion to confirm the arbitration award, exhibits its diligence in protecting its interests in a timely manner.

The court also erred in concluding that the Commission had adequately represented UPW's interests in the Hoopai appeal. The Ninth Circuit has adopted the same four-part test for assessing applications for intervention as of right under the federal rules. *See Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 527 (9th Cir.1983). In *Sagebrush Rebellion,* the court held "that the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests '*may be*' inadequate and that the burden of making this showing is minimal." *Id.* at 528 (emphasis added). Thus, UPW need only show that the Commission's representation of UPW's interests *may* have been inadequate. UPW was the exclusive representative of the bargaining unit in which Grievant and Hoopai were members. It had negotiated the subject collective bargaining agreement adopting the grievance procedure which had resulted in Hoopai's demotion. It initiated the grievance procedure resulting in the arbitration decision. It filed the special proceeding for confirmation of the arbitration award. As it states, its interest was to maintain the "integrity" of the grievance process.

The interest of the Commission was substantially different in that it was not a participant in the collective bargaining agreement, was not a party to the grievance process, and had no interest in the arbitration outcome. Plainly, the interests of the UPW would not be "[ ]adequately represented by the existing defendants" in Civil No. 99–0–3248. The UPW had challenged Hoopai's promotion by the City-related employer defendants. The City-related employer defendants had ruled against UPW in steps one and two of the grievance procedure. The Commission was solely concerned with determining the scope of its jurisdiction. The court accordingly was wrong in deciding that the Commission in Civil No. 99–0–3248 would adequately represent the interests of the UPW.

Most significantly, the disposition of the action would, as a practical matter, "impair or impede the intervenor's ability to protect [its] interest," *Ing,* 76 Hawai'i at 271, 874 P.2d at 1096 (brackets omitted), in the viability of the grievance proceeding. The court's announced decision in Civil No. 99–0–3248 which remanded the dispute to the Commission was in irreconcilable conflict with the arbitrator's decision that had already decided the same dispute. At the same time, the court had before it in S.P. No. 00–1–90, the UPW's motion to confirm the arbitration award, uncontested by the City defendants. In its motion to intervene, UPW disputed the court's remand to the Commission in Civil No. 99–0–3248. Contrary to the court's statement, the fact that UPW could have intervened at the Commission would not have resolved the grounds for UPW's reason to intervene. The resulting orders indicate the inconsistent legal commands visited upon the parties, the order in Civil No. 99–0–3248 requiring that the dispute be "remanded to the Commission . . . [for] a new hearing" on Hoopai's complaint, while the confirmation order in S.P. No. 00–1–90 mandated that "the employer is . . . ordered to comply with the provisions set forth in the" arbitration decision. The court should have granted UPW's motion for intervention as of right under HRCP Rule 24(a)(2). Thus, we vacate the

tain[ing] appellate review of the [district court's] order denying class action status." *Id.* at 392, 97 S.Ct. 2464. Second, it acknowledged that her motion "complied with, as it was required to, the time limitation for lodging an appeal prescribed by" Federal Rules of Appellate Procedure Rule 4(a). *Id.* The Court then concluded that

[t]he critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests.

*Id.* at 394, 97 S.Ct. 2464. Accordingly, the Court held that McDonald's motion was timely and should have been granted by the district court.

Here, UPW filed its motion to intervene for the purpose of challenging the court's jurisdictional decision on appeal. Therefore, as in *McDonald,* its motion was for a "post-judgment intervention for the purpose of appeal." *Id.* at 395–96, 97 S.Ct. 2464. Having filed its motion on March 13, 2000, months *before* the court issued its final judgment on October 25, 2000, its motion was timely pursuant to *McDonald.*

court's order denying UPW's motion to intervene.

## VI.

◼ We believe the Employers and the UPW are correct in their first point, *i.e.*, that the Commission lacked jurisdiction to hear Hoopai's appeal. HRS chapter 89 governs "[c]ollective [b]argaining in [p]ublic [e]mployment." Under HRS chapter 89, public employees [21] "have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives ... on questions of wages, hours, *and other terms and conditions of employment,* and to engage in lawful, concerted activities for the purpose of collective bargaining." HRS § 89–3 (1993) (emphasis added). The UPW states that Employers and the UPW have "negotiated in accordance with [HRS] §§ 89–10(a) [22] and 89–11(a) [23] provisions to submit all disputes arising over the interpretation and application of the unit 10 agreement to a grievance procedure culminating in final and binding arbitration." Employers and Hoopai do not dispute this assertion.

In that regard, HRS § 89–10(a) provides in part that collective bargaining agreements "may contain a grievance procedure and an impasse procedure culminating in final and binding arbitration[.]" Further, HRS § 89–11(a) stated that employers and exclusive representatives "shall have the power to enter into written agreement ... setting forth a grievance procedure culminating in a final and binding decision, to be invoked in the event of any dispute concerning the interpretation or application of a written agreement."

There is no dispute, then, that the governing collective bargaining agreement [24] provided a grievance procedure for all disputes concerning the interpretation or application of the unit 10 collective bargaining agreement. Section 15 of the collective bargaining agreement sets forth a three-step dispute resolution procedure. Collective Bargaining Agreement (CBA) §§ 15.10–15.16.[25] Section

---

21. For purposes of chapter 89, a public employee is "any person employed by a public employer except elected and appointed officials and such other employees as may be excluded from coverage in 89–6(c)." HRS § 89–2 (1993).

22. HRS § 89–10(a) (1993) provided in its entirety that

[a]ny collective bargaining agreement reached between the employer and the exclusive representative shall be subject to ratification by the employees concerned. The agreement shall be reduced to writing and executed by both parties. The *agreement may contain a grievance procedure* and an impasse procedure *culminating in final and binding arbitration, and shall be valid and enforceable when entered into in accordance with provisions of this chapter.* (Emphases added.)

23. HRS § 89–11(a) (Supp.1999) provided in its entirety as follows:

A public employer *shall have the power to enter into written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure culminating in a final and binding decision, to be invoked in the event of any dispute concerning the interpretation or application of a written agreement.* In the absence of such a procedure, either party may submit the dispute to the board for a final and binding decision. A dispute over the terms of an initial or renewed agreement does not constitute a grievance. (Emphasis added.)

24. There are two collective bargaining agreements that are part of the record on appeal: the agreement covering the period from July 1, 1993 to June 30, 1995 (1995 agreement) and the agreement covering the period from July 1, 1995 to June 30, 1999 (1999 agreement). The arbitrator relied on the 1995 agreement. The UPW relied on the 1999 agreement in its motion to intervene in Civil No. 99–0–3248 and in its pleadings on appeal. The agreements are substantially similar in language and no party challenges or raises an issue as to any material differences between the two agreements which would affect the dispute involving Grievant or Hoopai in either Civil No. 99–0–3248, S.P. No. 00–1–90, or in this appeal, S.Ct. No. 23883. Unless otherwise indicated, all references to the agreement hereafter are to sections in the 1999 agreement.

25. Section 15.01 of the agreement, entitled "Process," states that "[a] grievance which arises out of alleged Employer violation, misinterpretation, or misapplication of this Agreement, its attachments, and appendices shall be resolved as provided in Section 15."

In Section 15.02 of the agreement, "the term grievance" is broadly defined as a "complaint filed by a bargaining unit Employee, or by the Union, alleging a violation, misinterpretation, or misapplication of a specific section of this Agreement."

The formal three-step dispute resolution process in Section 15 provides in pertinent part as follows:

15.16 provides that the third step is arbitration. That step culminates in the issuance of an arbitrator's award that is deemed "final and binding." CBA § 15.20.[26]

In filing the grievance, the UPW initially alleged violations of CBA §§ 16.06c(3)[27] and 55.01c(5).[28] Those provisions of the collective bargaining agreement provide that when there are qualified and relatively equal applicants for a promotion, the qualified applicant with the greatest length of departmental seniority shall be promoted.

After the UPW filed a grievance on behalf of Grievant on December 23, 1996, the grievance was processed through steps one and two. On December 3, 1997, the chief of Emergency Medical Services rendered the step one decision against Grievant because Grievant "did not score 'relatively equal' in qualification for the position relative to the selectees" and, thus, there were no violations of CBA §§ 16.06(c)(3) and 55.01(c)(5). On January 7, 1997, the UPW appealed this decision.

On January 28, 1997, the Acting Director of the Department of Health rendered the step two decision against Grievant, agreeing with the response of the chief of emergency medical services that Grievant "did not score 'relative [sic] equal' " and there were no violations of the collective bargaining agreement. The Acting Director concluded his decision by "defer[ring] to [s]tep [three] of the grievance process." On February 3, 1997, the UPW appealed the decision to the arbitrator.

As mentioned before, the arbitration hearings were conducted on October 20 and 30, 1997. Hoopai was called as a witness on behalf of Employers. The arbitrator stated the UPW's position that "[CBA § ] 55.01c(5) is applicable in this instance" and that "Employer[s] violated the terms of the Collective Bargaining Agreement when [Employers] failed to promote the Grievant, a more senior

---

*15.10 FORMAL GRIEVANCE*
In the event the grievance is not satisfactorily resolved on an informal basis, the grieving party and/or the Union may file a formal grievance by completing the grievance form provided by the Union.
*15.11 STEP 1 GRIEVANCE*
The grievance shall be filed with the department head. . . .
*15.12 STEP 1 DECISION*
The decision of the department head shall be in writing and shall be transmitted to the grieving party and/or the Union within thirteen (13) calendar days after the receipt of the grievance.
*15.13 STEP 2 APPEAL OR GRIEVANCE*
*15.13 a.* In the event the grievance is not resolved in Step 1, the grieving party and/or the Union may file a letter of appeal with the Employer specifying the reasons for the appeal together with the copy of the grievance and a copy of the Step 1 decision within nine (9) calendar days after receipt of the Step 1 decision.
. . . .
*15.15 STEP 2 DECISION*
The decision of the Employer shall be in writing and transmitted to the grieving party and/or the Union within nine (9) calendar days after receipt of the appeal.
*15.16 STEP 3 ARBITRATION*
In the event the grievance is not resolved in Step 2, and the Union desires to submit the grievance to arbitration, the Union shall notify the Employer within thirty (30) calendar days after receipt of the Step 2 decision.

**26.** Section 15.20b of the agreement states that "[t]he award of the Arbitration shall be final and binding provided, the award is within the scope of the Arbitrator's authority as described as follows."

**27.** Section 16.06c of the agreement, entitled "Selection," states:

When the qualifications between the qualified applicants are relatively equal, the Employer shall use the following order of priority to determine which applicant will receive the promotion:
. . . .
3. The qualified applicant *with the greatest length of Departmental Seniority in the department where the vacancy exists.*
(Emphasis added.)

**28.** Section 55.01 of the 1995 agreement, entitled "Ambulance Services, City and County of Honolulu," provides in relevant part that:

a. All section[s] of this Agreement shall apply to employees of the City and County of Honolulu Health Department except as modified by this subsection.
. . . .
c. *SENIORITY.*
. . . .
(5) (In lieu of Section 16.06 c.) When making promotions, other factors being relatively equal, *departmental seniority . . . shall prevail.*
(Emphases added.)

employee to the FOS position when he was at least equal or better qualified than [Hoopai,] the junior employee who was promoted." The arbitrator's award was issued on February 10, 1998. This award ordered that the ESD was to (1) "set aside the promotions of the selectees for the [FOS] positions" and (2) "re-evaluate the applications of all the candidates for the three FOS positions" with the re-evaluation "limited to the candidates' supervisory experience." Thus, the dispute between Employers and UPW was properly resolved by arbitration pursuant to HRS §§ 89–10(a), 89–11(a), and CBA §§ 15.10 to 15.16.

## VII.

In conjunction with his second and third arguments, *see supra,* Hoopai asserts that he has an "independent right under [the] law" to appeal his demotion to the Commission because: (1) promotional disputes are properly with the Commission as HRS chapter 89 does not take precedence over civil service laws (relying on HRS §§ 76–1, 89–9(d), RCH §§ 6–302 and 6–306 (1994 ed.)); (2) RCH § 6–308 permits any person who is aggrieved by an action of the director of personnel or who has been demoted to appeal to the Commission; (3) this court, pursuant to *SHOPO v. Society of Professional Journalists,* 83 Hawai'i 378, 405, 927 P.2d 386, 413 (1996), has "adopted a basic tenant [sic] of labor law which is 'a court may not enforce a collective bargaining agreement that is contrary to public policy' "; and (4) the courts' preference for arbitration is irrelevant to the issue of Hoopai's Commission appeal.

## A.

As to Hoopai's first and second contentions, HRS §§ 76–1, 89–9(d), RCH §§ 6–302 and 6–306 provide for the creation and functioning of a civil service system. HRS § 76–1 [29] declares that the civil service system is based on merit principles. HRS § 89–9(d) generally requires that an agreement between an employer and an exclusive representative "shall not . . . be inconsistent with merit principles." RCH § 6–302 states that "the purpose of this chapter of the charter is to establish in the city a system of personnel administration based on merit principles." [30] RCH § 6–306 provides that "[a]ppointments and promotions in the civil service shall be made only after certification by the director under a general system based upon merit, efficiency and fitness[.]"

However, HRS § 89–9(d) provided that

> [t]he *employer and the exclusive representative shall not agree to any proposal which would be inconsistent with merit principles* . . . or which would interfere with the rights of a public employer to . . . (2) determine qualification, standards for work, the nature and contents of examinations, hire, promote, transfer, assign, and retain employees in positions and suspend, demote, discharge or take other disciplinary action against employees for proper cause; . . . *provided that the employer and the exclusive representative may negotiate procedures governing the promotion and transfer of employees to positions within a*

29. HRS § 76–1, declaring that the civil service system is based on merit principles, states in relevant part:

> It is the purpose of this chapter to establish in the State and each of the counties a system of personnel administration *based on merit principles* . . . . In order to achieve these purposes it is the declared policy of the State that *the personnel system hereby established be applied and administered in accordance with the following merit principles:*
>
> . . . .
> (3) Just opportunity for competent employees to be promoted within the service; [and]
> (4) Reasonable job security for the competent employee, including the right of appeal from personnel actions[.]

(Emphases added.)

30. In declaring that the civil service system is based on merit principles, RCH § 6–302 mirrors HRS § 76–1 and states in pertinent part as follows:

> In order to achieve these purposes it is the declared policy of the city that the *personnel system hereby established be applied and administered in accordance with the following merit principles:*
>
> . . . .
> (c) Just opportunity for competent employees to be promoted within the service; [and]
> (d) Reasonable job security for the competent employee, including the right of appeal from personnel actions.

(Emphasis added.)

*bargaining unit,* procedures governing the suspension, *demotion,* discharge or other disciplinary actions taken against employees ...; *provided further that violations of the procedures so negotiated may be the subject of a grievance process* agreed to by the employer and the exclusive representative.

(Emphases added.)

Based on the statute's plain language, HRS § 89–9(d) generally prohibited Employers and the UPW from negotiating a collective bargaining agreement "inconsistent with merit principles" including provisions that interfere with the rights of an employer to promote, transfer or demote employees. As signified by the word "provided" in HRS § 89–9(d), however, this prohibition is subject to two qualifications permitting the employer and the exclusive representative to (1) negotiate, *inter alia,* promotion and demotion procedures and (2) a grievance process to remedy violations of such procedures.

The term "provided" is defined as "[t]he word used in introducing a proviso. Ordinarily it signifies or expresses a condition; but ... it may import a ... restraint, modification, or *exception to something which precedes.*" *Black's Law Dictionary* 1224 (6th ed.1990) (emphasis added). As employed in HRS § 89–9(d), the first proviso regarding negotiations for promotion and demotion procedures, among other matters, introduced an exception to the general prohibition against interference with the public employers' enumerated prerogatives under HRS § 89–9(d)(2). The second proviso likewise allowed the employer and the representative to negotiate a grievance process to remedy violations of agreements under the first proviso.

Thus, HRS § 89–9(d) modified the protection as to merit principles with the qualifications "that the employer and the exclusive representative may negotiate procedures governing the promotion ... of employees" and "further that violations of the procedures ... may be the subject of a grievance process." Accordingly, the statement that a collective bargaining agreement may not be "inconsistent with merit principles" is qualified by the provisions sanctioning collective bargaining agreement provisions for grievance procedures related to the promotion and demotion of employees.

## B.

As indicated, HRS §§ 76–1 and 89–9(d) both concern merit principles underlying the civil service system. HRS § 76–1 requires each county to establish "a system of personnel administration based on merit principles." HRS § 89–9(d) provides that employers and exclusive representatives "shall not agree to any proposal which would be inconsistent with merit principles." In that regard "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." *In re Robert's Tours & Transp., Inc.,* 104 Hawai'i 98, 103, 85 P.3d 623, 628 (2004); *Office of Hawaiian Affairs v. State,* 96 Hawai'i 388, 394, 31 P.3d 901, 907 (2001); *Kam v. Noh,* 70 Haw. 321, 325, 770 P.2d 414, 417 (1989).

As related, HRS § 89–9(d) contained two qualifications to the merit principle system that approve collective bargaining on procedures governing employee promotions and demotions and for a grievance process in the event these procedures are violated. Hence, read in pari materia, HRS §§ 76–1 and 89–9(d) do not clash, the latter merely setting forth exceptions to the merit principles acknowledged in both statutes. Because HRS § 89–9(d) specifically provides for exceptions to the merit principle system established by HRS § 76–1, HRS chapter 89 does not conflict with HRS chapter 76 in this case.

## C.

Hoopai also relies on the language of RCH § 6–308, which empowers the Commission to hear appeals. RCH § 6–308 provides that "[a]ny person aggrieved by any action of the director of personnel or who has been suspended, demoted or dismissed may appeal to the civil service commission for redress *pursuant to its rules and regulations* [,]" hence subjecting appeals to the conditions set forth in such rules and regulations. (Emphasis added.) In this regard, the rules im-

plicated by RCH § 6–308 are RCSC §§ 13–2 and 13–3.

RCSC § 13–2(a) recognizes that a "grievance exists if an employee alleges that there has been a violation, misinterpretation or misapplication of a specific provision of a personnel law, regulation, rule or policy." RCSC § 13–2(b) provides for the resolution of these grievances in the following ways:

> *Complaints with respect to* classification, pricing or repricing and *matters under the collective bargaining agreements, shall not be treated as grievances for purpose of this rule and these complaints shall not be processed through this grievance procedure. These complaints may be appealed to the [C]ommission* or compensation appeals board *or the grievance procedure under the agreements, as appropriate,* following their respective appeal procedures.

(Emphases added). Consequently, by its plain language, RCSC § 13–2(b) excludes, among other subjects, complaints related to matters covered under collective bargaining agreements in favor of grievance procedures under the agreement.[31] The UPW brought the grievance under the collective bargaining agreement. As discussed previously, the grievance procedure was properly brought under the agreement. Hence, as a "complaint with respect to ... matters under the agreement[ ]," the controversy was "not [to] be processed through this [*i.e.* the Commission's] grievance procedure" but "under the agreements ... following their respective appeal procedures." RCSC § 13–2(b). In the instant case, then, the appropriate venue for UPW's complaint was by way of the procedure negotiated under the collective bargaining agreement.

Similarly, RCSC § 13–3 permits appeals to the Commission, but carves out an exception for grievance procedures negotiated in collective bargaining agreements. RCSC § 13–3 states that:

> As to any matter within the scope of these rules and of any pertinent statute, including statutes on discrimination relating to equal employment opportunities, *except those matters which are covered by the grievance procedures contained in each of the collective bargaining agreements or under these rules,* any employee suffering legal wrong because of any action by the director or appointing authority, or adversely affected or aggrieved by the action, shall be entitled to appeal through the grievance procedure as provided for in this chapter.

(Emphasis added.) Thus, Hoopai's reliance on the language of RCH § 6–308, which provides for an appeal to the Commission, is misplaced in light of RCSC §§ 13–2 and 13–3, which mandate that collective bargaining agreement grievance procedures apply instead of the Commission's grievance and appeals process.

### D.

Hoopai's third contention that *SHOPO* stands for the proposition that "a court may not enforce a collective bargaining agreement that is contrary to public policy" is not applicable. In *SHOPO,* the Society for Professional Journalists (SPJ) and the State of Hawai'i Office of Information Practices challenged the confidentiality provisions of a collective bargaining agreement between the City and SHOPO. 83 Hawai'i at 382, 927 P.2d at 391. This challenge arose from SPJ's attempts, under HRS chapter 92F, the Uniform Information Practice Act, to obtain records of disciplinary actions taken against employees of the Honolulu Police Department. *Id.* at 382, 385–89, 927 P.2d at 391, 393–97.

This court held that HRS chapter 92F was not pre-empted by HRS chapter 89 on three grounds. First, the court explained that "HRS [c]hapter 92 is not a 'conflicting statute on the same subject matter' as HRS [c]hapter 89, within the meaning of HRS § 89–19, and thus is not preempted by HRS [c]hapter 89 or any collective bargaining agreement negotiated thereunder[.]" *Id.* at 406, 927 P.2d at 414. Second, this court reasoned that "a topic relating to conditions of employment cannot be subject to negotiated agreement if the agreement would require a public employer to fail to perform a duty

---

**31.** From the language employed by the statute, the appropriate venue for classification and pricing complaints appears to be the compensation appeals board. HRS § 302A–620 (Supp.2003).

imposed upon it by statute[.]" *Id.* Third, this court concluded that because "the confidentiality provision in SHOPO's [collective bargaining agreement] with the City prevents the HPD from performing its duties under [HRS chapter 92F]," such provision "is therefore unenforceable[.]" *Id.*

In *SHOPO,* collective bargaining provisions that favored confidentiality of personnel records were contrary to public policies under HRS chapter 92F that mandate public access to and public disclosure of government records. *See id.* at 405, 927 P.2d at 413–14 (stating that "the confidentiality provision ... purportedly requires the HPD to fail to perform its duty to disclose disciplinary records as mandated by HRS Chapter 92F, notwithstanding that the duty to provide access to government records is not discretionary under the UIPA"); HRS § 92F–11 (Supp.1992) (imposing "affirmative agency disclosure responsibilities" and establishing general rule that "all government records are open to public inspection unless access is restricted or closed by law").

 Here, the disputed collective bargaining agreement provisions are specifically authorized by (1) HRS §§ 89–10(a) and 89–11(a)(1), empowering public employers and exclusive representatives to negotiate collective bargaining agreements containing grievance procedures, *see* discussion *supra,* and (2) HRS § 89–9(d), permitting negotiation of promotion and demotion procedures and a grievance process as provisos to general merit principles, *see* discussion *supra.* Nothing in HRS §§ 76–1, 89–9(d), RCH §§ 6–302, and 6–306, cited by Hoopai, conflicts with the policy favoring the procedures authorized under HRS §§ 89–9(d), 89–10(a), or 89–11(a). HRS § 89–9(d), which provides that a collective bargaining agreement may contain grievance procedures related to the promotion and demotion of employees, *see* discussion *supra,* does not prohibit the inclusion of arbitration as part of that grievance process.

### E.

Hoopai's argument that the Commission has jurisdiction because HRS chapter 89 does not take precedence over civil service laws is also misconceived. HRS §§ 89–19 [32] and 89–10(d) [33] provide, respectively, that if there are "conflicts" (1) between HRS chapter 89 and statutes and ordinances or rules adopted by the State, a county or commissions and (2) between the collective bargaining agreement and any rules and regulations adopted by the employer, then the collective bargaining agreement will prevail unless "inconsistent with HRS 89–9(d)."

As indicated previously, HRS § 89–9(d) contains an exception to the merit system principle that authorizes the employer and exclusive representative to specify grievance procedures related to promotions and demotions. *See* discussion *supra.* The Commission's rules bar a collective bargaining agreement's grievances from the appeals process before the Commission. RCSC §§ 13–2 and 13–3; *see* discussion *supra.* Therefore, there is no conflict between HRS §§ 89–9(d), 89–10(a), 89–11(a) (authorizing collective bargaining agreements that contain grievance procedures) and HRS §§ 76–1, RCH §§ 6–302 and 6–306 (providing for a civil service system based on merit principles). For the same reasons, Employers' and UPW's first arguments are incorrect insofar as they argue that preemption applies in this case.

### VIII.

Accordingly, we hold that the Commission lacked jurisdiction over the dispute between

---

**32.** HRS § 89–19 provides in relevant part that [t]his chapter *shall take precedence over all conflicting statutes concerning this subject matter and shall preempt all contrary local ordinances ... or rules adopted by* the State, *a county,* or any department or agency thereof, *including* the departments of human resources development or of personnel services or *the civil service commission.*
(Emphases added.)

**33.** HRS § 89–10(d) provides in relevant part that

[a]ll existing rules and regulations adopted by the employer, including civil service or other personnel regulations, which are not contrary to this chapter, shall remain applicable. *If there is a conflict between the collective bargaining agreement and any of the rules and regulations, the terms of the agreement shall prevail; provided that the terms are not inconsistent with section 89–9(d).*
(Emphasis added.)

UPW and Employers and that the dispute was properly decided under the grievance process adopted in the collective bargaining agreement. Because the Commission lacked jurisdiction, Hoopai's fifth argument with respect to preclusion before the Commission of witness testimony on preemption and his sixth argument with respect to the alleged participation by the Commission's attorney in its proceedings as violations of due process are moot. *See Johnston v. Ing,* 50 Haw. 379, 381, 441 P.2d 138, 140 (1968) (noting that "appellate courts will not consider moot questions").

## IX.

■■■■■■ Employers' and UPW's second arguments both maintain that the court erred in not treating the arbitrator's decision as "final and binding."[34] Inasmuch as we hold that the court was incorrect in ruling the Commission had jurisdiction, the October 31, 2001 judgment confirming the arbitration decision is final and binding as Employers and UPW argue. No appeal was taken from that judgment. A judgment is final and binding unless an appeal is taken. *Cf. Darcy v. Lolohea,* 77 Hawai'i 422, 424, 886 P.2d 759, 761 (App.1994) (holding "that an arbitration award which has become a final judgment pursuant to [Hawai'i Arbitration Rule 21], may not be vacated or modified by the circuit court, or appealed to an appellate court"); *Kim v. Reilly,* 105 Hawai'i 93, 96, 94 P.3d 648, 651 (2004) (citing *Darcy* and reasoning that "the arbitration awards were entered as unappealable final judgments, which the circuit court was precluded from modifying or vacating"). This also resolves Hoopai's fourth contention that arbitration was irrelevant to Hoopai's appeal.

## X.

■■■■ Relevant to Hoopai's first argument that he was denied due process, the court

---

34. In his Answering Brief, Hoopai indirectly addresses Employers' and UPW's second argument by maintaining that "the issue of this appeal is not the arbitration but rather Hoopai's rights under Civil Service laws." As discussed previously, the grievance procedure before the arbitrator was properly conducted pursuant to HRS §§ 89–9(d), 89–10(a), 89–11(a), and CBA §§ 15.10 to 15.16. *See* discussion *supra.* More-

concluded in pertinent part that (1) "Hoopai was denied his due process right by [the] Commission when it summarily dismissed Hoopai's appeal" (conclusion no. 2), (2) "Hoopai was promoted, successfully completed his probationary period with excellent ratings and was made permanent in his FOS position as of December 16, 1995" (conclusion no. 3), (3) "Hoopai's permanent status created a proprietary right in his promotion" (conclusion no. 4), (4) "Hoopai was demoted" (conclusion no. 5), and (5) "Hoopai is entitled to have the ... Commission hear his appeal as to whether he was improperly demoted, whether Civil Service Laws and Rules were violated and whether the merit principles were ignored" (conclusion no. 6).

Hoopai in his first argument contends he was entitled to a hearing before the Commission, citing the same statutory and ordinance provisions discussed previously as to the question of the Commission's jurisdiction. Inasmuch as we have determined that the Commission lacked jurisdiction, that issue has been resolved. Hence, insofar as the court's conclusions no. 2 and 6 required the Commission to hear Hoopai's appeal, the conclusions were wrong.

In conclusion no. 4, the court states that by virtue of Hoopai's promotion and completion of probationary period, Hoopai had a "proprietary right in his promotion." Conclusions no. 3 and 5 state matters of fact that are apparently related to conclusion no. 4. While not clear, these conclusions seem to be related to Hoopai's argument that he has established "a proprietary right to his position."

In what appears to be related contentions, Hoopai challenges "the manner in which the City demoted him after promoting him to a permanent position," pointing to the "series of personnel actions, [including the] retroac-

---

over, the civil service laws and regulations as embodied in HRS § 76–1, RCH §§ 6–302, 6–306, 6–308, RCSC §§ 13–2 and 13–3 are not in conflict with the collective bargaining laws. *See* discussion *supra.* Thus, to the extent that Hoopai indirectly refers to Employers' and UPW's second argument, this argument has been addressed.

tive redefinition of his status as a 'temporary employee' then a demotion due to the arbitration decision" and the "relevant paperwork" completed by Employers to "undo" Hoopai's selection, promotion, successful completion of probation, and his "permanent" FOS position.[35] In this regard, and as sole authority for this proposition, Hoopai merely argues that *Sussel v. Civil Service Commission*, 74 Haw. 599, 851 P.2d 311 (1993) is "on point" and that had his appeal to the Commission "been permitted to proceed on its merits and he was found to have been 'demoted,' the action would be illegal" because Hoopai did not receive "the appropriate ten-day notice." [36]

Hoopai's reliance on *Sussel* is inapposite. In that case, Sussel, the administrator of the Oahu Civil Defense Agency, had been appointed by the prior mayor. *Id.* at 602, 851 P.2d at 314. Following the election of the new mayor, the post of "Deputy Director Designate" was created by the mayor to have actual oversight of the agency, with Sussel reporting to that deputy. *Id.* at 603, 851 P.2d at 314. Sussel remained in the position as administrator, but was reclassified from Executive Assistant I to Administrative Assistant II. *Id.* at 603, 611, 851 P.2d at 314, 318. As a result of this reclassification, he

continued to receive the same salary, but was not eligible to receive pay raises later given to the position of Executive Assistant I. *Id.* at 603–04, 851 P.2d at 314.

City officials maintained, and the Commission determined, that Sussel had not been demoted but had been merely "downwardly reallocated." *Sussel,* 74 Haw. at 603, 606, 851 P.2d at 314–15. Sussel appealed the Commission's decision to the state circuit court and filed suit separately in the federal district court, alleging federal, contract, defamation, and state law claims.[37] *Id.* at 604–05, 851 P.2d at 315. In the course of the federal litigation, the district court judge stated that Sussel "lost his title, his authority, and his office" and found "[o]n these undisputed facts … he was in fact 'demoted.'" *Id.* at 612, 851 P.2d at 318. Ultimately, the district court dismissed Sussel's federal and defamation claims, and remanded the contract and state law claims to the state court. *Id.* at 605, 851 P.2d at 315.

In the state court proceedings, the circuit court "stated that the issue of Sussel's demotion was *res judicata* as the result of the [federal district judge's] prior finding" and "concluded that Sussel had been illegally demoted." *Id.* at 606, 851 P.2d at 316. On

---

35. With respect to "paperwork" to "undo" his promotion, Hoopai cites to four Notifications of Personnel Action issued by Employers after the arbitration decision was issued, but offers no further explanation. All four notifications are dated April 15, 1998, and are signed by the City's Director of Personnel.

 As far as can be discerned, the first notification seemingly cancelled Hoopai's probationary promotion to the EMS FOS position, effective June 15, 1995. The second notification corrected Hoopai's limited term promotion to reflect promotion from MECS I to EMS FOS, effective June 15, 1995, pursuant to the arbitration award. The third notification cancelled Hoopai's completion of new probation as an EMS FOS, effective December 16, 1995. The fourth notification corrected Hoopai's status by ending his limited term promotion as an EMS FOS on February 24, 1998, and returned him to his former MECS I class on February 25, 1998, pursuant to the arbitration award. In view of the absence of any further explication in the court's conclusions or Hoopai's pleadings, the significance of these notifications is that they attempt to comply with the arbitration award. Inasmuch as the grievance process was valid, the arbitration award was effective and thus enforceable.

36. Hoopai does not maintain he was denied due process in the grievance procedure. Employers argue that (1) the sole reason for Hoopai's appeal to the Commission was the enforcement of the arbitration decision, (2) Hoopai submitted as evidence at the Commission hearing a Notification of Personnel Action, dated April 15, 1998, which informed Hoopai that his demotion was due solely to the arbitration decision, (3) Hoopai actively participated in the arbitration hearing as a witness, and (4) the arbitrator thoroughly considered Hoopai's qualifications through his testimony and exhibits.

 The UPW argues that Hoopai was not denied due process because Hoopai received actual notice from the UPW that the promotions were being challenged by Grievant, and that such grievance could adversely affect Hoopai. The UPW also asserts that Hoopai was afforded an opportunity to be heard during the arbitration when he was called as a witness. Lastly, the UPW argues that Hoopai's "ultimate claim to the promotion … depend[s] on the outcome of the re-selection process ordered by the Arbitrator."

37. *Sussel* does not refer to a deprivation of property right without due process claim.

appeal to this court, the parties agreed that "if Sussel was demoted, such demotion was illegal because Sussel did not receive the requisite ten-day written notice setting forth the specific reasons for the demotion" pursuant to Revised Rules of the Commission Rule 1.1–D.10.2C. *Id.* at 610, 851 P.2d at 317. This court applied the doctrine of collateral estoppel and gave "preclusive effect to the [federal district judge's] finding that Sussel was demoted rather than downwardly reallocated." *Id.* at 612, 851 P.2d at 318. But in the instant case, Hoopai merely states that had the Commission found that Hoopai was demoted, this "action would be illegal for the same reason as *Sussel* .... [t]he lack of the appropriate ten-day notice." Hoopai fails to explain further the significance of the "ten-day written notice" and how Rule 1.1–D.10.2C was violated in his case.

Furthermore, in *Sussel,* there is no indication that Sussel was covered by a collective bargaining agreement or that a grievance process was initiated pursuant to a collective bargaining agreement. Rather, he (1) "was appointed to the position" under the former mayor, *id.* at 602, 851 P.2d at 314; (2) his application "had been reviewed pursuant to relevant civil service procedures," *id.;* and (3) when he was demoted, he appealed to the Commission "asserting that he was a civil service employee and that *under the applicable civil service rules,* he had been illegally demoted because he had not received the requisite ten-day written notice." *Id.* at 604,

851 P.2d at 314 (emphasis added). There was no discussion in *Sussel* as to any collective bargaining agreement governing the appeal to the Commission. Here, Hoopai was an employee covered by the collective bargaining agreement, he received notice and was given the opportunity to be heard in the grievance process and, as discussed previously, the process was authorized by statute, rules and regulations, and the collective bargaining agreement. *See* discussion *supra.* Accordingly, based on the foregoing, Hoopai has failed to establish a due process claim and the court was wrong to conclude that Hoopai was denied a due process right.[38]

### XI.

Therefore, the court's October 25, 2000 judgment and its April 11, 2000 order denying without prejudice UPW's motion to intervene are vacated and the case is remanded to the court with instructions to grant the UPW's motion and enter judgment for the Employers and UPW.

Concurring Opinion by MOON, C.J.

I concur in the result only.

---

**38.** Notwithstanding their arguments that Hoopai was not denied due process, Employers also contend that Hoopai has a "very limited due process right" as a demotee in union arbitration cases. Employers point to *Benson v. Communication Workers of Am.,* 866 F.Supp. 910 (E.D.Va.1994), *aff'd,* 81 F.3d 148 (4th Cir.1996), *cert. denied,* 519 U.S. 820, 117 S.Ct. 75, 136 L.Ed.2d 34 (1996). In *Benson,* an employee sued his union and employer for demoting him pursuant to an arbitration decision. *Id.* at 914. The employee argued that his union had breached its duty of fair representation owed him by not providing him with notice of or an opportunity to be heard at

any stage of the grievance or at the arbitration which resulted in his demotion. *Id.* at 914–15.

The district court rejected employee's argument and reasoned that "the union's duty of fair representation did not require it to do more than articulate and pursue a non-arbitrary interpretation of the Agreement although the successful pursuit of its interpretation would detrimentally affect one of its members." *Id.* at 914. The court also noted that "[t]he union has the right and obligation to advance collective interest [and] in doing so, it must also choose between sometimes opposing interests." *Id.* at 915.