**Electronically Filed
Supreme Court
SCAP-25-0000531
10-FEB-2026
12:56 PM
Dkt. 69 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

NOVA BURNES, et al.,
Plaintiffs-Appellees,

vs.

HAWAIIAN ELECTRIC COMPANY, INC. dba HAWAIIAN ELECTRIC, et al.,
Defendants-Appellees,

and

ACE AMERICAN INSURANCE COMPANY, et al.,
Intervenor Subrogation Plaintiffs-Appellants.

SCAP-25-0000531

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-25-0000531; CASE NO. 2CCV-24-0000964)

FEBRUARY 10, 2026

McKENNA, ACTING C.J., EDDINS, AND GINOZA, JJ.,
CIRCUIT JUDGE MORIKONE, IN PLACE OF DEVENS, J., RECUSED,
AND CIRCUIT JUDGE TOMASA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY EDDINS, J.

**I.**

On August 8, 2023, fire devastated Lahaina, the former
capital of the Hawaiian Kingdom.  Over one hundred people lost

their lives. Hundreds suffered physical and emotional injuries. Properties and historic sites were destroyed. Businesses and livelihoods impacted by the fires paused as Lahaina worked to rebuild. The lasting physical and mental health toll, and social, cultural, and economic impacts of this catastrophe continue to resonate in Hawai'i and beyond.

Following the Lahaina fire and other same-day fires in Kula and Olinda, individually represented plaintiffs (Individual Plaintiffs) sued Hawaiian Electric Company, Kamehameha Schools, the State of Hawai'i, the County of Maui, and others (Defendants). Meanwhile, class actions were filed in state court, then removed to federal court. Later those lawsuits were consolidated and refiled in state court as a single class action. That consolidated class action is now before us.

The class action nears finality in the Circuit Court of the Second Circuit. Sophisticated court-ordered mediation led to a "global settlement" in August 2024. This settlement's initial terms were reduced to a global settlement term sheet that resolved all claims against Defendants for an aggregate settlement amount. On November 1, 2024, Individual Plaintiffs executed an individual settlement agreement with Defendants. That same day, the class action plaintiffs (Class Plaintiffs) signed a class action settlement agreement with Defendants. These complementary settlement agreements constitute the "global

settlement."  At that time, the $4.037 billion aggregate settlement amount was not yet allocated between the class and individual settlements.

This appeal involves Class Plaintiffs' insurers' (Subrogating Insurers) effort to intervene in the class action settlement proceedings.  Subrogating Insurers believe they have an interest in the proceedings that justifies intervention by right under Hawai'i Rules of Civil Procedure (HRCP) Rule 24(a)(2) and permissive intervention under HRCP Rule 24(b)(2).

We hold that Subrogating Insurers do not have a protectable interest that allows them to intervene.  Based on applicable Hawai'i statutes, In re Maui Fire Cases held that when insureds and defendants settle, the insurer's sole remedy is a lien on the settlement.  In re Maui Fire Cases (Maui Fires), 155 Hawai'i 409, 425, 565 P.3d 754, 770 (2025).  In the context of a tort settlement, insurers may not seek to recoup insurance payments through their own lawsuits against defendants.  See id. at 432, 565 P.3d at 777.

Here, Class Plaintiffs have settled with Defendants.  This settlement activated the Hawai'i Revised Statutes (HRS) § 663-10 lien framework.  It foreclosed potential subrogation suits by Subrogating Insurers against Defendants related to the Class Plaintiffs.

3

Still, Subrogating Insurers insist they retain equitable subrogation rights justifying intervention. Some class members may fail to submit their claim against the class settlement fund. There, they receive no settlement award. Thus, Subrogating Insurers complain that there is nothing for them to attach liens to under HRS § 663-10. Subrogating Insurers are wrong. A non-claiming class member's choice does not conjure equitable subrogation rights.

Adopting Subrogating Insurers' position would functionally eliminate mass tort class settlements. It would also erode HRCP Rule 23's framework, one that promotes uniformity, judicial and litigation economy, and procedural remedies for under-resourced plaintiffs who would otherwise be unable to pursue litigation.

Subrogating Insurers' effort to narrowly construe a class settlement inevitability as conferring subrogation rights fails. For purposes of equitable subrogation, class members' entitlement to recover from the settlement fund constitutes recovery from the tortfeasor. When a class settles, insurers are limited to their exclusive HRS § 663-10 remedy - liens. See Maui Fires, 155 Hawai'i at 432, 565 P.3d at 777. Further, because subrogation is fundamentally a derivative claim (insurers may only subrogate when insureds have the right to sue, and insurers have paid the insured), resolution of a tort

lawsuit by settlement ends insurers' subrogation rights. See id. at 416, 432, 565 P.3d at 761, 777.

The settlement's dispatch of Subrogating Insurers' subrogation rights without party status satisfies due process. We have already held that insurers suffer no prejudice when policyholders settle and extinguish subrogation rights without insurer consent. Id. at 437-38, 565 P.3d at 782-83. We did not hold that HRS § 663-10's exclusive lien remedy and process offends due process. See id. Accordingly, a settlement provision that allows Subrogation Insurers to file claims with the settlement fund does not bestow class member status and the connected due process right to opt out.

We further conclude that no protectable interest exists based on Subrogating Insurers' claim that the settlement fund is insufficient. Economic interests alone do not confer intervention rights.

It's evident. Subrogating Insurers lack a protectable interest justifying intervention by right. And absent a protectable interest, the disposition of this action does not "as a practical matter, impair or impede [Subrogating Insurers'] ability to protect [such an] interest." See Ing v. Acceptance Ins. Co., 76 Hawai'i 266, 271, 874 P.2d 1091, 1096 (1994) (citation omitted). Without a protectable interest, Subrogating

Insurers cannot intervene by right. See id.; Baehr v. Miike, 80 Hawaiʻi 341, 345, 910 P.2d 112, 116 (1996).

Even if Subrogating Insurers *had* a protectable interest, their motion was untimely. Subrogating Insurers should have intervened when they knew or should have known that settlement would adversely impact their interests. When the class action settlement was publicized on November 4, 2024, Subrogating Insurers knew the settlement may impact their interests. Waiting until after our March 2025 Maui Fires opinion (when they were *certain* of this court's holding regarding their subrogation interests) was misguided. Intervention derails a complex and delicate settlement, substantially prejudicing the parties. Thus, the motion to intervene was too late.

We also conclude that the circuit court properly denied permissive intervention. See HRCP Rule 24(b)(2).

We affirm Second Circuit Court Judge Peter T. Cahill's order denying Subrogating Insurers' motion to intervene.

**II.**

**A.  Circuit Court Filings**

To start, we revisit the procedural posture preceding our March 2025 Maui Fires decision and the present appeal.

As we related in Maui Fires, Individual Plaintiffs brought numerous actions against several defendants in the Circuit Court of the Second Circuit. 155 Hawaiʻi at 414, 565 P.3d at 759. The

court initiated a special proceeding per Rules of the Circuit Courts of the State of Hawai'i Rule 12 to "coordinate the issuance of complex case management orders applicable to all individual proceedings in the numerous cases arising from the Maui wildfires."  Id.  "[T]he circuit court ordered liaison counsel to coordinate the Individual Action Plaintiffs[] . . . then appointed a special settlement master and co-administrators to facilitate settlement."  Id. at 414-15, 565 P.3d at 759-60.

"Separately three class action lawsuits were filed in the First and Second Circuits in the name of injured parties that had not yet filed individual actions (Consolidated Class Plaintiffs).  These three class actions were removed to the United States District Court for the District of Hawai'i, where they were consolidated into a single action and later re-filed in the Second Circuit."  Id. at 415, 565 P.3d at 760.

In October 2024, the Consolidated Class Plaintiffs and Defendants stipulated to dismiss the federal class action complaints.  Id. at 415 n.2, 565 P.3d at 760 n.2.  On October 30, 2024, Class Plaintiffs refiled a single complaint in the Circuit Court of the Second Circuit.  Id.

Before then, the Individual Plaintiffs, Class Plaintiffs, Defendants, and Subrogating Insurers had participated in court-ordered mediation to resolve the pending actions.  Id. at 415, 565 P.3d at 760.  In early August 2024, all parties (minus the

7

Subrogating Insurers) signed a settlement term sheet. Id. That document detailed a global settlement resolving all claims against Defendants. Id. The settlement required either (1) written release by all Subrogating Insurers of claims against Defendants, or (2) "a judgment, order, or opinion determining that if the Settlement Agreement between the [Individual and Class Plaintiffs] and the Paying Parties becomes effective, . . . the Subrogating Insurers' exclusive remedy for any Maui Fires Claims would be asserting liens, if any, against their policyholders for their respective shares of the Aggregate Settlement Amount[.]" Id. (brackets in original omitted).

As Maui Fires explained, "[o]n August 19, 2024, pursuant to the proposed global settlement, the circuit court issued an order declaring itself to have 'exclusive jurisdiction, authority, and legal duty to review and resolve any and all subrogation claims or liens arising out of claims for payments under HRS § 663-10 in the event the global settlement of the Maui Fires claims between Plaintiffs and Defendants becomes effective.'" Id. at 416, 565 P.3d at 761.

On September 12, 2024, the circuit court reserved three questions to this court. Id. We accepted the reserved questions on September 25, 2024, ordered briefing, held oral argument, and on March 17, 2025, published our opinion answering the reserved questions. See id.

8

We held that "the lien-claim process established by HRS § 663-10 provides the exclusive remedy for an insurer to recover for claims paid to an insured for damages caused by a third-party tortfeasor where the insured has settled with the tortfeasor[.]"  Id. at 425, 565 P.3d at 770.

Days later, on March 24, 2025, Class Plaintiffs moved for preliminary class certification, settlement agreement approval, and appointment of class counsel.  The settlement agreement provides for a class settlement fund totaling $135 million.

**B.    The Class Settlement**

On November 1, 2024, as part of the global settlement and shortly after Class Plaintiffs re-filed their action in state court, Class Plaintiffs and Defendants executed a Class Settlement Agreement.  On the same day, the Individual Plaintiffs executed an Individual Settlement Agreement with Defendants.

The Class Settlement Agreement conditioned the settlement on either a written release by "[e]ach and every" Subrogating Insurer of all claims against Defendants, *or* a final and unappealable decision that

> if the Class and Individual Settlement Agreements become effective, (a) the Subrogation [Insurers'] exclusive remedy for any claims arising out of the Maui Fires would be asserting liens, if any, against their policyholders for their respective shares of the Aggregate Settlement Amount, and (b) the Subrogation [Insurers] shall be barred from bringing or maintaining any claims arising out of the Maui Fires against the Defendants.

To meet this condition, the settlement agreement states that Judge Cahill's August 19, 2024 special proceeding order regarding the operation of HRS § 663-10 "constitutes a decision of a trial court that, if rendered Final and Unappealable, would satisfy Section 5.1.2."

According to the settlement agreement, the "Settlement Class" is defined as all persons who suffered injuries (physical or economic), or who had property damage or damages to their businesses arising from the fires. The Settlement Class also includes other "eligible" family or personal representatives of injured or deceased individuals. The "Settlement Class" excludes defendants and "insurers and insurance syndicates that claim or could claim damage or harm regarding the Maui Fires arising out of a right of subrogation or reimbursement[.]"

"Class Plaintiffs" are "all Persons included within the Settlement Class who do not timely and validly elect to opt-out of the Settlement Class pursuant to the procedures set forth in the Class Notice." Class Plaintiffs are thus class members (or those who fall under the broad Settlement Class definition) who remain part of the class after the opt-out deadline.

The settlement agreement also defined "Class Claimant." A "Class Claimant," as defined by the settlement agreement, is "any Person who files a claim for or receives a Monetary Award

from the Class Settlement Fund."  Per Section 4.1.2(k) of the settlement agreement, the class settlement plan (to be crafted after preliminary approval for the court's final approval) must "address the resolution of claims of Subrogat[ing] Insurers for payments made to policyholders who are Class Plaintiffs but are not Class Claimants, which shall include a process for such insurers to submit claims on behalf of their insureds when such insureds do not submit a claim."  Put differently, when a class member does not file a claim against the settlement fund, § 4.1.2(k) allows insurers to seek reimbursement via the settlement plan's claims process.

## C.    Subrogating Insurers' Motion to Intervene

On April 8, 2025, Subrogating Insurers moved to intervene. They argued that they met all four HRCP Rule 24(a) intervention by right factors.  These factors are: "a) whether the application was timely; b) whether the [applicants] claimed an interest relating to the property or transaction which was the subject of the action; c) whether the disposition of the action would, as a practical matter, impair or impede the [applicants'] ability to protect that interest; and d) whether the [applicants'] interest was inadequately represented[.]"  Ing, 76 Hawai'i at 271, 874 P.2d at 1096 (brackets in original omitted).

First, Subrogating Insurers maintained that their motion was timely.  Before this court's March 17, 2025 Maui Fires

opinion, they "did not know and *could not know* their subrogation rights with respect to the Class Action litigation and the proposed settlement agreement." The parties would suffer no prejudice, Subrogating Insurers insisted, because intervention would allow Class Plaintiffs to renegotiate the settlement terms and avoid footing the cost of the notice process.

Second, Subrogating Insurers argued that they possess a protectable interest in equitable subrogation rights that would be impaired by the settlement's release of their claims against Defendants. Third, Subrogating Insurers asserted that the settling parties cannot adequately represent them because those parties aspire to release their subrogation claims without compensation.

Class Plaintiffs and Defendants both opposed the motion to intervene. Class Plaintiffs responded that Subrogating Insurers lack a protectable interest that could be impaired by this action because HRS § 663-10's lien-claim process provides their exclusive remedy. Defendants agreed that Subrogating Insurers possess no protectable interest in equitable subrogation. They also argued the motion to intervene was untimely, and that Class Plaintiffs adequately represent Subrogating Insurers' interests.

In their reply, Subrogating Insurers raised for the first time a non-lien theory of recovery. Subrogating Insurers assert that the settlement designates them as Class Claimants who may

12

recover directly from the settlement when insured class members do not submit settlement claims. They say this procedural difference – direct recovery rather than recovery through liens on class members' settlement payments - "demonstrates why [Maui Fires] does not extend to the class action settlement."

On June 24, 2025, the circuit court denied Subrogating Insurers' motion to intervene. The court ruled that Subrogating Insurers "failed to establish a legally protectable interest that would be impaired by the disposition of this action." It reasoned that the settlement confines Subrogating Insurers to a lien remedy under HRS § 663-10. Subrogating Insurers lack subrogation rights, the court found, reciting a line from Maui Fires: "A right that does not exist cannot be prejudiced." 155 Hawai'i at 438, 565 P.3d at 783.

The circuit court rejected Subrogating Insurers' claim that this court, in answering the reserved questions, "was not aware of how the application of HRS § 663-10 would affect class action settlements." The court reasoned that our decision considered the global settlement, which included the class action settlement. It also noted that the Class Plaintiffs filed an amicus brief and participated in the reserved questions' oral argument. Further, the circuit court concluded that because HRS § 663-10 applies to "any civil action in tort," and this class action is "indisputably" a civil action in tort, Maui Fires

13

applies equally to class action settlements. Thus, Maui Fires'
holding that limits insurers' equitable subrogation upon a tort
settlement applies to class actions.

In a footnote, the circuit court noted that "[i]f an
insured does not opt out of the class and declines to submit a
claim, § 4.1.2(k) of the Class Settlement Agreement allows the
insurer to submit a claim on the insured's behalf." The court
found that the settlement provision allowing insurers to submit
claims on behalf of non-claiming class members bears "no nexus"
to Subrogating Insurers' grounds for intervention. Whether
insurers will submit such claims remains uncertain, the court
explained, and will be determined "after the settlement is
approved and the claims process is underway." In other words,
an insurer's ability to submit claims for non-claiming insureds
only arises after settlement approval. The court reasoned that
this settlement provision "gratuitously protects the value of
liens for insurers" in this scenario, but "cannot have the
unintended effect of creating an intervention right for non-
party insurers that does not already exist[.]"

The circuit court also rejected Subrogating Insurers' due
process challenge to releasing their subrogation rights without
party status. The court applied Maui Fires' holding that
policyholders may settle and extinguish subrogation rights
without insurer consent. This raised no constitutional

14

concerns, the court found. Because they never had subrogation rights to begin with, Subrogating Insurers suffered no prejudice.

The court concluded that Subrogating Insurers lacked due process rights. Nonetheless, Subrogating Insurers "received sufficient process," it reasoned. They filed proposed objections to the settlement, and argued during a May 28, 2025 motion to intervene hearing. Later, after there is an allocation to challenge, the court explained, Subrogating Insurers "will also be allowed the opportunity to argue[] . . . that the settlement allocates money between general and special damages in bad faith, to the degree the Hawaii Supreme Court's decision affords them such a right." But this future "opportunity" comes after approval and allocation, and thus "cannot be used to object to the settlement itself." Thus, the court found, Subrogating Insurers "received ample process in this matter."

The court further found that the action's disposition does not impair Subrogating Insurers' HRS § 663-10 lien rights. The court referenced Section 4.1.2(k) of the class settlement agreement. It "expressly preserves the full extent of the [Subrogating] Insurers' lien rights under HRS § 663-10." Subrogating Insurers claimed that the settlement fund inadequately satisfied their liens. But the court ruled that

15

"[a]n economic stake in the outcome of the litigation" cannot justify intervention.  See Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993).

Next, the circuit court rejected Subrogating Insurers' objections to the settlement amount and class settlement allocation.  Maui Fires created a check for "bad faith" on the allocation between general and special damages.  But our opinion, the court reasoned, did not require that insurers receive full reimbursement, or allow insurers to object to the insureds' settlement amounts.  Because the damages allocation remains unknown until settlement approval and the claims process begins, the circuit court concluded that intervention before then "would do nothing to protect the [i]nsurers' lien rights as the [s]upreme [c]ourt defined them."

The court also deemed the motion untimely.  Subrogating Insurers should have intervened when they had "reason to know that negotiations might produce a settlement . . . to their detriment."  See California Dep't of Toxic Substances Control v. Com. Realty Projects, Inc., 309 F.3d 1113, 1120 (9th Cir. 2002).  The court found "[t]hat occurred in November 2024, when the class settlement was made public and after the [Subrogating] Insurers had been involved in the negotiations."  And intervention would be highly prejudicial, the court found, because it would "threaten to unwind the complex and delicately

16

balanced global settlement agreement." See Ing, 76 Hawai'i at 272, 874 P.2d at 1097 (losing a settlement would be highly prejudicial).

The circuit court further stated that even if the other HRCP Rule 24(a)(2) factors were met, it would deny the motion because Class Plaintiffs adequately represent Subrogating Insurers' interests. When the intervention applicant has the same "ultimate objective" as an existing party, "a presumption of adequacy of representation arises." See Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). Here, the court noted, Subrogating Insurers share Class Plaintiffs' goal to maximize recovery from Defendants.

Last, the circuit court denied permissive intervention under HRCP Rule 24(b)(2). Because Subrogating Insurers have no protectable interest in the lawsuit, allowing Subrogating Insurers to intervene would not "assist in the just and equitable adjudication of any issues between the parties." See Baehr, 80 Hawai'i at 345, 910 P.2d at 116.

Subrogating Insurers appealed to the Intermediate Court of Appeals. On October 1, 2025, Class Plaintiffs applied for transfer. We granted the transfer application on October 22, 2025. Briefing concluded on January 14, 2026. We held oral argument on January 27, 2026.

17

## III.

### A. Subrogating Insurers are not entitled to intervention by right

We hold that because Subrogating Insurers lack a protectable interest in this class action, they are not entitled to intervention by right under HRCP Rule 24(a)(2). By extension, without a protectable interest, no impairment arises from disposition of this action. These conclusions alone preclude intervention. But there's more. The motion to intervene is untimely.

We agree with Subrogating Insurers in one respect. Class Plaintiffs inadequately represent their interests. Subrogating Insurers need to run the table, though. "Failure to meet even one [factor] prevents intervention 'by right' under HRCP Rule 24(a)(2)." Baehr, 80 Hawai'i at 345, 910 P.2d at 116. The absence of a protectable interest and untimeliness preclude intervention.

We begin with the second HRCP Rule 24(a)(2) factor – a protectable interest in the subject of the action.

### 1. Subrogating Insurers do not have a protectable interest

#### a. Maui Fires applies to class actions

Maui Fires held that once an insured settles with a tortfeasor, a subrogating insurer's "exclusive remedy" is a lien

18

on the settlement recovery under HRS § 663-10.  155 Hawai'i at 425, 565 P.3d at 770.

A judgment or settlement in "any civil action in tort" activates HRS § 663-10's lien process.  Subrogating Insurers say that Maui Fires does not apply to class actions.  But a class action premised on a tort claim is a civil action in tort.  So when class action parties settle, subrogating insurers are restricted to statutory liens on plaintiffs' recovery.  See id.

We did not limit Maui Fires to individual settlements.  The statutory term "settlement" encompasses class settlements, not just individual ones.

Class settlements receive the same treatment as individual settlements under HRS § 663-10.  "*Any* civil action" is a plain, all-inclusive legislative pronouncement that covers every civil suit.  HRS § 663-10 (emphasis added).  "Any" tort suit includes individual and class actions.  The statute contains no restriction to individually negotiated agreements; it envisions "'a comprehensive structure for addressing liens and subrogation rights' *whenever* an insured party pursues a judgment or settlement from a third-party tortfeasor."  Maui Fires, 155 Hawai'i at 426, 565 P.3d at 771 (emphasis added) (quoting Yukumoto v. Tawarahara, 140 Hawai'i 285, 294-95, 400 P.3d 486, 495-96 (2017)).  "[T]he plain language of the statute[] . . . evinces a broad application[.]"  Id.

19

HRS § 663-10's reference to "the judgment or settlement" does not limit the lien process to individual settlements. Nor does HRS § 663-10 exclude HRCP Rule 23's class action framework and settlement procedure.

Rule 23 itself does not require class members to engage in settlement negotiations and affirmatively consent to settlement. See HRCP Rule 23(a). Rather, the rule permits class representatives to pursue claims on behalf of passive class members, promoting judicial and litigation efficiency, and decreasing economic burdens on class members. See id.; Life of the Land v. Land Use Comm'n of State of Haw., 63 Haw. 166, 179, 623 P.2d 431, 442 (1981) ("[HRCP Rule 23's] pragmatic objectives include economies of time, effort, and expense, as well as uniformity of decision for persons similarly situated.").

HRS § 663-10's lien procedures apply to all settlements and must be read harmoniously with HRCP Rule 23. Both frameworks advance aligned objectives: avoiding duplicative litigation, enhancing efficiency, and promoting orderly distribution. See Life of the Land, 63 Haw. at 179, 623 P.2d at 442; Maui Fires, 155 Hawai'i at 429, 565 P.3d at 774 (quoting H. Stand. Comm. Rep. No. 4-86, in 1986 House Journal, at 42-43).

Read alongside HRCP Rule 23, neither HRS § 663-10's text nor legislative intent suggests that it applies only to individual settlements. To hold otherwise allows insurers to

"interfere with the ability of the injured Plaintiffs and the Defendants to settle their dispute" in the class context, a disfavored outcome we rejected in Maui Fires. 155 Hawai'i at 435, 565 P.3d at 780 ("[A]llowing the Subrogating Insurers to pursue reimbursement through direct subrogation actions against the Defendants, rather than the HRS § 663-10 lien-claim process, would interfere with the ability of the injured Plaintiffs and the Defendants to settle their dispute.").

When it comes to HRS § 663-10, formalistic distinctions between individual and class settlements make no sense. Our holding promotes uniformity in serving HRS § 663-10's design. Maui Fires' central holding applies to class actions.

> b.  **Equitable subrogation is unavailable when class members settle but do not file settlement claims**

We turn next to Subrogating Insurers' argument that they have a protectable interest in subrogation because some class members may not submit settlement claims. We hold that class members' decision to forego filing claims does not create a protectable interest in subrogation.

Settlement displaces subrogation. "Where the insured recovers by settlement or judgment against the tortfeasor, HRS §§ 431:13-103(a)(10)(A) and 663-10 apply and equitable subrogation has no place." Maui Fires, 155 Hawai'i at 433, 565 P.3d at 778. Maui Fires preserved insurers' subrogation rights

21

only where there is no recovery from the tortfeasor. Id. It does not follow that Subrogating Insurers are entitled to equitable subrogation when class members fail to file claims against the settlement. See id. at 425, 565 P.3d at 770 ("HRS § 663-10 does not apply in the absence of a settlement or judgment.").

Subrogating Insurers' intervention interest, as they define it, relies on a narrow subset of class members who choose not to file claims against the settlement. Because some class members will inevitably decline to participate in the claims process, treating non-claimants as having never "settled" would grant insurers equitable subrogation rights - and with them, intervention-worthy interests - in every mass tort class action. This would scuttle class action settlements unless defendants obtain releases of insurers' claims. Permitting a subrogation-based intervention "workaround" discourages comprehensive settlement. Defendants' settlement goal is *always* to obtain releases of all potential claims, especially in the class action context. See Kris J. Kostolansky & Diane R. Hazel, Class Action Settlements: Res Judicata, Release, and the Identical Factual Predicate Doctrine, 55 Idaho L. Rev. 263, 266 (2019).

The economics are straightforward. Defendants settle to limit their liability. Subrogating insurers seek to maximize reimbursement. Allowing subrogation for non-claiming class

members in a tort suit undermines the very releases that make class settlements possible.  Intervention for a limited subclass of non-claiming class members would frustrate Rule 23's core purposes: efficiency and access to justice through collective recovery.  See Life of the Land, 63 Haw. at 179, 623 P.2d at 442; Gregory M. Wirt, Missed Opportunity: Stephenson v. Dow Chemical Co. and the Finality of Class Action Settlements, 109 Penn St. L. Rev. 1297, 1298-99 (2005).  Our class action framework does not allow this approach.

For equitable subrogation purposes, class members' entitlement to recover from the settlement fund constitutes recovery from the tortfeasor.  Upon class settlement, insurers are limited to an exclusive statutory remedy.  Liens.  See HRS § 663-10; Maui Fires, 155 Hawai'i at 432, 565 P.3d at 777.

Subrogating Insurers' position that "uninterested" (non-participating) class members do not actually "pursue" recovery misreads basic class action procedural principles.  HRCP Rule 23 allows representative class members to protect the class' interests without requiring active class member participation in settlement or judgment.  HRCP Rule 23(a).  Class members are bound by the final judgment.  Unless they opt out, they're in.  HRCP Rule 23(c)(2) ("the judgment, whether favorable or not, will include all members who do not request exclusion"); HRCP Rule 23(e) ("A class action shall not be dismissed or

compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.").

To hold otherwise undercuts finality principles in class actions. An "absent" class member who does not opt out pursues the civil action resolving their claims. See HRCP Rule 23(c)(2); Maui Fires, 155 Hawai'i at 433, 565 P.3d at 778; Akau v. Olohana Corp., 65 Haw. 383, 388, 652 P.2d 1130, 1134 (1982) ("A judgment in a class action consisting of the people actually injured will bind the members who are all those allowed to sue."). Thus, insurers are limited to the statutory lien process. See Maui Fires, 155 Hawai'i at 433, 565 P.3d at 778.

We pause to discuss core principles supporting equitable subrogation. An insurer's rights are derivative. Subrogation rights derive from and are coextensive with an insured's claims. See State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 329, 978 P.2d 753, 767 (1999). Insurers have no greater rights than their insureds. See id. "[S]ubrogation involves 'stepping into' the shoes of another, when an insurer brings an action against a tortfeasor based upon its subrogation rights, the insurer's rights flow from the insured's rights." Id. (quoting 4 R. Long, The Law of Liability Insurance § 23.03, at 23-13 to 23-14 (1998)).

24

Where the insureds' claims are resolved via settlement, so too are the insurers' derivative actions. Insurers cannot subrogate when their insureds have settled. See id.

Class members are bound by the settlement, despite whether they file their own claims to recover from the settlement fund. It follows that even if those non-claiming class members do not recover direct payments from the settlement fund, the subrogating insurers are still limited to reimbursement from the settlement. See id. Insurers cannot subrogate settled claims. See id.

Maui Fires recognized that equitable subrogation prevents a tortfeasor's unjust enrichment. 155 Hawai'i at 433, 565 P.3d at 778. Class settlements eliminate this concern. Defendants agree to compensate claimants without a liability finding. Even when class members do not submit settlement claims, defendants remain committed to pay a certain amount. That payout remains constant even when class members don't file claims. At the same time, there is no plaintiff windfall concern because plaintiffs who forego filing claims will not recover twice. See id. at 416, 565 P.3d at 761 ("Subrogation prevents a double recovery by limiting the insured from collecting damages for the same injury from both the insurer and the tortfeasor.").

Next, we address Subrogating Insurers' position that absent "competition" with their insureds, they may subrogate.

25

Subrogating Insurers misread Maui Fires. They say HRS § 663-10 only kicks in "when there is some form of practical competition between an insurer and their insured for settlement funds."

Not so. HRS § 663-10 does not hinge on competition between insurer and insured for settlement funds. Maui Fires held that absent settlement or judgment, no competition exists between insured and insurer for tortfeasor funds. 155 Hawaiʻi at 433, 565 P.3d at 778. Thus the insurer's third-party claim poses no risk to the insured's recovery. Id. In those circumstances (no settlement or judgment), equitable subrogation prevents tortfeasor unjust enrichment. Id. (citing State Farm, 90 Hawaiʻi at 331, 978 P.2d at 769).

Subrogating Insurers maintain that "competition" between the insurer and the insured must exist before their equitable subrogation rights may be precluded. Subrogating Insurers insist that where the insured plaintiff "stands 'to recover nothing on [their] own, there [is] no risk of [their] recovery being diminished.'" See id. at 435, 565 P.3d at 780. Thus, they say, HRS § 663-10 does not apply absent competition.

Again, Subrogating Insurers misread Maui Fires. This court's discussion of plaintiffs' non-recovery did not create a "competition" precondition. Subrogating Insurers selectively cite our opinion's analysis of Park v. City & Cnty. of Honolulu, a workers' compensation case they previously relied on in Maui

26

Fires. There we explained that citing Park was "misplaced" because employee Park's claim had been dismissed. Id. at 435, 565 P.3d at 780 (citing Park v. City & Cnty. of Honolulu, 154 Hawaiʻi 1, 3, 543 P.3d 433, 435 (2024)). "Because the plaintiff stood to recover nothing on her own, there was no risk of her recovery being diminished by the insurer's subrogation action," this court reasoned. Id. The passage Subrogating Insurers invoke merely distinguishes Park. It does not graft a general competition requirement. See id.

As we flagged, Park involved "no recovery by judgment or settlement of a third-party claim against which the insurer would have been able to assert a lien under HRS § 663-10." Id. We contrasted Park with the Maui Fires case, "where the Plaintiffs have reached the terms of a settlement agreement with the Defendants, and where allowing the Subrogating Insurers to pursue their own, separate subrogation actions risks diminishing or destroying entirely the Plaintiffs' recovery under the proposed settlement." Id.

The "competition" concept in Maui Fires protects insureds from prejudice when insurers pursue equitable subrogation. See id. at 425, 565 P.3d at 770. But competition generally does not limit when HRS § 663-10 applies. Equitable subrogation applies only when *no settlement or judgment* exists, and thus there's no competition between the insured and the insurer for the same

27

funds from the same defendants.  Id.  Therefore, equitable subrogation is only available when (1) a judgment or settlement has not been reached, and (2) the insurer can recover *only* through a separate action.  See id.

Here, the insureds and the defendant-tortfeasors have settled.  Defendants committed to compensate class members through the settlement agreement and fund.  A "judgment or settlement against which the insurer may assert a lien" now exists.  See id. at 433, 565 P.3d at 778.  So the "competition" Subrogating Insurers invoke neither exists nor is required.

Class action settlement eliminates a primary justification for equitable subrogation: preventing a tortfeasor's unjust enrichment.  See id.  Settlement avoids potential unjust enrichment regardless whether insurers are fully compensated.

Here, unused class settlement funds will be "redistributed to Class Claimants in an amount proportional to their pro rata share of the recovery."  No funds revert to Defendants.  Therefore, individual class member claim filings do not affect competition for settlement funds.  The settlement amount paid by Defendants remains fixed, no matter the degree of class member participation.

The legislature balanced the interests of the insured and the insurer.  In Maui Fires, we explained that to create "a fair, uniform and comprehensive procedure governing the rights

28

and obligations of insurance companies and consumers for the reimbursement of insurance benefits from third-party sources of recovery," the legislature "'limit[ed] reimbursement and subrogation for all insurance companies' to the comprehensive procedure prescribed by HRS §§ 431:13-103(a)(10) and 663-10." 155 Hawaiʻi at 431, 565 P.3d at 776 (quoting H. Stand. Comm. Rep. No. 1330-00, in 2000 H. Journal, at 1515; Yukumoto, 140 Hawaiʻi at 296, 400 P.3d at 497). The statutory framework prevents insurers from blocking tort settlements because their lien interests are affected. See id. Yet, Subrogating Insurers aspire to relitigate HRS § 663-10's operation.

Subrogating Insurers believe the settlement's process (allowing them to file claims on behalf of insureds) conflicts with HRS § 663-10 because liens attach only after class members receive awards. The statute requires no such thing. See HRS § 663-10.

Subrogating Insurers complain that when class members do not file claims and obtain awards, no recovery exists for lien attachment. They say that the settlement plan does not actually "include provisions that address the resolution of claims of Subrogation Insurers for payments made to policyholders who are Class Plaintiffs but are not Class Claimants" and does not "include a process for such insurers to submit claims on

behalf of their insureds when such insureds do not submit a claim."

The putative absence of an insurers' claims procedure in the settlement plan does not affect our intervention analysis. Subrogating Insurers have not alleged an actual violation of their lien rights or an inability to assert claims on behalf of their insureds (to the contrary they have asserted settlement claims for their insureds). They merely insist that subrogation should be available when class members do not submit claims with the settlement fund.

In any event, intervention in the class settlement proceedings is not a condition to later challenge lien reimbursement rights under HRS § 663-10. To repeat, settlement precludes subrogation. So the settlement provision does not confer subrogation rights, and the settlement plan's purported procedural gap does not affect our subrogation analysis.

In Maui Fires we preserved insurers' subrogation rights when there is *no* recovery from the tortfeasor. 155 Hawai'i at 425, 565 P.3d at 770 ("HRS § 663-10 does not apply in the absence of a settlement or judgment."). But that ruling does not entitle insurers to equitable subrogation when class members fail to file claims against the settlement. See id.

We rebuff Subrogating Insurers' formalistic stance that Section 4.1.2(k)'s insurer claims process does not constitute

30

assertion of a lien under HRS § 663-10. Subrogating Insurers contend that when insurers file claims on behalf of class members, no "judgment or settlement" exists for lien attachment. The argument about Section 4.1.2(k)'s procedure does not alter its substance. This settlement agreement provision achieves the same result as a traditional HRS § 663-10 lien. Subrogating Insurers recover from their insureds' settlement proceeds, just as under statutory liens. The HRS § 663-10 lien process ensures that insurers recover the appropriate portion (or all) of their insured's special damages obtained through settlement. See HRS § 663-10. When insurers recover special damages through the claims process, HRS § 663-10's objectives are met. In class actions, an insured's absence from the settlement claims process does not manufacture subrogation rights.

c. **Release of equitable subrogation rights without party status does not violate due process**

Subrogating Insurers say their designation as "Class Claimants" in the settlement agreement violates due process. The "Class Claimant" designation, the insurers contend, "unlawfully deprive[s] [them] of the due process rights afforded to full class members." Due process, they believe, requires giving class members the opportunity to opt out of the class to "prosecute their own claims." Class Plaintiffs and Defendants counter. Even though insurers may file claims *on behalf* of

31

class members, they are not Class Claimants, a subclass of class members who actually file claims against the settlement.

Class members have the right to opt out and be excluded from the class (and thus, settlement). HRCP Rule 23(c)(2); Patrickson v. Dole Food Co., Inc., 137 Hawai'i 217, 229, 368 P.3d 959, 971 (2015); Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985)) ("[D]ue process requires at a minimum that an absent [class] plaintiff be provided with an opportunity to remove [themself] from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.").

Though they themselves have no such rights, Subrogating Insurers try to invoke *class members*' due process rights. But class members' procedural opt-out protections do not extend to insurers. Class members' due process opt-out rights are inaccessible to Subrogating Insurers.

As an initial matter, Subrogating Insurers object that the settlement binds them, as though they were class members. The settlement between the Class Plaintiffs and Defendants, though, neither adjudicates insurers' rights nor imposes obligations on them. Rather, the settlement itself forecloses equitable subrogation by activating HRS § 663-10's lien-claims process - the insurers' exclusive remedy. See Maui Fires, 155 Hawai'i at 425, 565 P.3d at 770. The "opt out" right Subrogating Insurers

covet as their primary procedural protection, therefore, is unavailable.

First, we have already held that insurers suffer no prejudice when policyholders settle and douse subrogation rights without insurer consent. Id. at 437-38, 565 P.3d at 782-83. We did not hold that limiting insurers to the statutory lien process violates due process. Nor did Subrogating Insurers argue this at the time. See id. Second, insurers submitting claims with the settlement fund on behalf of non-claiming class members does not confer class member status or the right to opt out. See Alden v. Kona Palisades, Inc., 3 Haw. App. 47, 49, 641 P.2d 330, 332 (App. 1982) ("[J]udicially-approved settlement is binding upon the members of the class who have not opted out."); 4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:22 (6th ed.) ("Courts regularly find that nonclass members have no standing to object to a proposed settlement.").

Subrogating Insurers' due process argument rests on class member rights. Yet the settlement expressly excludes Subrogating Insurers from the Settlement Class. The settlement's claims process for insurers does not change this.

We return to the well-worn metaphor of subrogation: the insurer steps into the insured's shoes and acquires no independent rights. See Maui Fires, 155 Hawai'i at 418, 565 P.3d at 763 (citing State Farm, 90 Hawai'i at 329, 978 P.2d at 767).

33

To grant subrogating insurers their *own separate* opt-out rights as extra class members, cobbles shoes that do not fit the insured. Instead of stepping into their insureds' shoes, Subrogating Insurers try to shoehorn themselves into the settlement as independent parties. This effort collides with the core rationale for equitable subrogation. Thus, Subrogating Insurers lack a due process right to opt out under HRCP Rule 23(b).

> d. **Economic interest in the settlement amount is not a protectable interest**

We next address Subrogating Insurers' claim that the class settlement is underfunded.

Economic interest alone does not establish intervention rights. "An economic stake in the outcome of the litigation, even if significant, is not enough" to establish a protectable interest. Greene, 996 F.2d at 976. Greenlighting intervention based on supposed settlement fund shortfalls would give insurers veto power over tort settlements. The settlement fund's purported inadequacy does not create a protectable interest.

Subrogating Insurers also challenge the settlement. They quote Maui Fires: "settling parties may not, in bad faith, structure their settlement in such a way as to nullify the protections afforded to insurers[.]" See Maui Fires, 155 Hawai'i at 439, 565 P.3d at 784. Subrogating Insurers, though, skip the

part that limited insurer protections to those "under HRS § 663-10." Id.

Maui Fires addressed settlement structure in the context of "protections afforded to insurers under HRS § 663-10." Id. We gave examples of settlement structures that nullify HRS § 663-10's protections: "settlement . . . that purports to waive a property and casualty insurer's right to assert an otherwise valid lien," and "a settlement improperly structured as for general damages only, when the circumstances do not warrant such a settlement." Id. These scenarios constitute settlement in bad faith. See id.

The good faith requirement prevents collusive settlements. See id. But it does not confer insurers equitable subrogation rights. See id. HRS § 663-10 protects insurers' settlement entitlement and special damages reimbursement – nothing more. Id. at 438, 565 P.3d at 783.

Our opinion did not require full insurer reimbursement through settlement liens. See id. at 439, 565 P.3d at 784. Rather, as the circuit court observed, we "created a 'bad faith' check by providing the right to object that the allocation of damages between general damages and special damages was not made in good faith." Id. This good faith check is not a blank check for insurers to challenge the settlement amount here, through intervention.

Subrogating Insurers do not allege improper conduct. They do not assert under-allocation of special damages to evade HRS § 663-10. Defendants state that "[t]here currently is no allocation between general and special damages for the insurers to challenge." As for the circuit court, it reasoned that damage allocation will occur only after the court "approves the settlement and the claims process proceeds." Maui Fires expressly preserved challenges to the settlement allocation for insurers. Id. This bad-faith review does not support intervention in the settlement itself. See id.

Thus the alleged settlement fund inadequacy fails to establish a protectable interest justifying intervention.

## 2. Subrogating Insurers' non-existent interest is not impeded or impaired

HRCP Rule 24(a)(2) directs courts to examine if "the disposition of the action would, as a practical matter, impair or impede the intervenor's ability to protect that interest." Ing, 76 Hawai'i at 271, 874 P.2d at 1096 (cleaned up) (citation omitted). Impairment flows from a protectable interest. Absent a protectable interest, exclusion from the litigation does not constitute impairment. Am. Nat. Bank & Tr. Co. of Chicago v. City of Chicago, 865 F.2d 144, 147 (7th Cir. 1989) ("Because the [applicant] has failed to assert a direct, legally protectable interest, it follows that it has failed to assert an interest

36

that could be impaired or impeded by the district court proceedings.").

Settlement approval impairs nothing.  Absent a protectable interest in equitable subrogation, a class action settlement that covers all claims against all defendants causes no impairment.  "A right that does not exist cannot be prejudiced." Maui Fires, 155 Hawai'i at 438, 565 P.3d at 783.  Similarly, a nonexistent protectable interest cannot be impaired.  See id.

Because Subrogating Insurers lack a protectable interest, disposition of this action causes no impairment.  See Ing, 76 Hawai'i at 271, 874 P.2d at 1096.

**3.    Subrogating Insurers' motion to intervene was untimely**

The motion to intervene was untimely.  See HRCP Rule 24(a)(2).

Timeliness is "a matter left to the sound discretion of the trial court."  Ing, 76 Hawai'i at 271, 874 P.2d at 1096. Timeliness depends on the totality of the circumstances.  Id. Two factors matter most.  "[E]specially relevant is: (1) the lapse of time between when [the applicant] should have sought intervention and when it actually did; and (2) the prejudice caused to the [existing parties] by the lapse of time."  Id.

Subrogating Insurers insist intervention was timely because their subrogation rights remained up in the air until Maui Fires.  We disagree.

37

Subrogating Insurers should have intervened when the class settlement became public on November 4, 2024.  At that point, they knew or should have known the settlement would adversely affect their interests.  See Ing, 76 Hawaiʻi at 271, 874 P.2d at 1096; Com. Realty Projects, Inc., 309 F.3d at 1120.  The class settlement agreement conditioned settlement approval on a court order barring insurers' subrogation claims against Defendants.  That settlement agreement's express terms belie Subrogating Insurers' argument.  Further, knowledge of the settlement amount (not available in November 2024) is immaterial to their purported equitable subrogation rights.

The motion to intervene was untimely despite being filed before preliminary approval.  Treating any delay before preliminary approval as timely would dilute the timeliness requirement in class action settlements.  Intervention contemporaneous with the settlement's agreement would have averted a five-month delay.  Given the complexity and scope of this settlement and the many plaintiffs and defendants, this delay prejudices the parties - irrespective of whether preliminary approval preceded the motion to intervene.  Subrogating Insurers cannot wait until they are dissatisfied with the litigation's progress.  See Ballard v. Garrett, 78 S.W.3d 73, 76 (Ark. 2002).  They offer no passable justification for their delay.

The putatively stayed proceedings pending Maui Fires also does not justify tabling intervention from November 2024 to April 2025.  (Subrogating Insurers argue that they couldn't have intervened during the stay, while Class Plaintiffs and Defendants say a stay was not in place at the time.)  Subrogating Insurers concede they waited for our March 2025 decision on the reserved questions before moving to intervene.  Strategic choice, not the stay, caused the delay.

Next, we consider prejudice, the main component of timeliness.  See Hoopai v. Civil Service Comm'n, 106 Hawaiʻi 205, 216, 103 P.3d 365, 376 (2004).  Prejudice outweighs mere delay.  "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case."  7C Mary Kay Kane & Allan Stein, Fed. Prac. & Proc. Civ. § 1916 (3d ed. Sep. 2025 update).

Intervention that "'interject[s] numerous other issues into the litigation' . . . [leading] to 'considerable delay' in the disposition of the case" prejudices the parties.  Hoopai, 106 Hawaiʻi at 216, 103 P.3d at 376 (quoting Blackfield Hawaii Corp. v. Travelodge Int'l, Inc., 3 Haw. App. 61, 63, 641 P.2d 981, 983 (App. 1982)).  So too with intervention that slows relief.  See Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir. 1978) (because the consent decree was "already being fulfilled,"

revocation of the decree "would create havoc and postpone the needed relief," thus prejudicing the parties); Orange Cnty. v. Air Cal., 799 F.2d 535, 538 (9th Cir. 1986) (allowing intervention after the City of Irvine learned the outcome "would not be entirely to its liking," and "undoing . . . five years of protracted litigation" would prejudice the parties).

Maui Fires held that "Plaintiffs have reached the terms of a settlement agreement with the Defendants, and . . . allowing the Subrogating Insurers to pursue their own, separate subrogation actions risks diminishing or destroying entirely the Plaintiffs' recovery under the proposed settlement." 155 Hawaiʻi at 435, 565 P.3d at 780. Intervention five months after settlement would imperil the settlement and delay relief, prejudicing the parties.

Given the urgent need for relief in the wake of the Maui wildfires, unraveling the global settlement would deny plaintiffs' relief when they need it most. See id. Granting intervention would unwind two years of court-ordered mediation and settlement negotiations, substantially prejudicing the parties. See id. Intervention at this stage would derail a "complex and delicately balanced" settlement. See United States v. State of Oregon, 913 F.2d 576, 588 (9th Cir. 1990) ("[In] intervening at this stage to challenge the [Idaho salmon harvest

allocation] plan would seriously prejudice all the parties to the suit because the plan is complex and delicately balanced.").

Prompt settlement is vital.  Delay harms victims and erodes overall settlement value for injured plaintiffs, especially those with underinsured or uninsurable injuries.  The settlement agreement itself touts "the benefits of a settlement at this time to Class Plaintiffs."  (Emphasis added.)

Undue delay prejudicially extends plaintiffs' suffering and diminishes relief.  Plaintiffs may face increased pressure to settle for less if the current settlement upends.  And rising class litigation costs will reduce class recovery.  See John E. Lopatka & D. Brooks Smith, Class Action Professional Objectors: What to Do About Them?, 39 Fla. St. U. L. Rev. 865, 865-66 (2012) (delayed "implementation of a class settlement" creates "[t]he prospect of financial loss").  Meanwhile, Defendants likely settled to avoid higher-cost individual settlements, potential liability findings, and prolonged litigation.  See Lopatka & Smith, supra, at 866 n.3 ("the interests of defendants in expedition [of litigation termination via settlement] are different from those of class counsel").

The multi-faceted, carefully calibrated global settlement resolves claims for thousands of individual and class plaintiffs, allocates defendant contributions, and distributes

billions in settlement funds through individual and class agreements for a wide range of damages.

After unimaginable loss, Lahaina and its people approach finality through the global settlement.  Settlement will allow this community to pivot from litigation to restoration.

The class settlement, alongside the individual settlement, balances multiple interests and provides mutually-beneficial resolution.  Collapse due to Subrogating Insurers' intervention would severely prejudice the parties.

The court properly denied the untimely motion to intervene.

**4.    Class Plaintiffs do not adequately represent Subrogating Insurers' interests**

We turn to the last intervention requirement.  Because Subrogating Insurers lack a protectable interest that would be impaired by disposition of this action, and the motion was untimely, the motion to intervene by right fails.  See Baehr, 80 Hawai'i at 345, 910 P.2d at 116 (failure to meet even one HRCP Rule 24(a)(2) factor prevents intervention by right).

Nonetheless, because the circuit court cites the adequate representation factor as a separate basis for denial, we clarify.  Class Plaintiffs do not adequately represent Subrogating Insurers' interests.

An applicant intervenor only needs to show that the party's representation of their interests "*may* have been inadequate."

Hoopai, 106 Hawai'i at 217, 103 P.3d at 377 (citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir. 1983)). Class Plaintiffs do not represent Subrogating Insurers' interest in equitable subrogation for non-claiming class members. Throughout this litigation, Class Plaintiffs have consistently opposed subrogation.

Class Plaintiffs quarrel with Subrogating Insurers as to the "interest" they represent on behalf of the insurers. Class Plaintiffs say that they share an interest in "maximizing recovery" with Subrogating Insurers. But they oversimplify the two parties' positions and interests.

Subrogating Insurers' interest in this action is not just boosting reimbursement. They want to subrogate when class members do not file settlement claims. While subrogation enlarges insurer recovery, it conflicts with Class Plaintiffs' core interests: timely settlement, maximum payment from Defendants, and release of all subrogation claims as a settlement condition. See id. at 217, 103 P.3d at 377.

Class Plaintiffs inadequately represented Subrogating Insurers' interests. See id.

Still, failure to meet all HRCP Rule 24(a)(2) factors prevents intervention by right.

43

**B.    The circuit court properly denied permissive intervention**

HRCP Rule 24(b)(2) permits intervention when (1) the application is timely, and (2) "an applicant's claim or defense and the main action have a question of law or fact in common." HRCP Rule 24(b)(2).  When ruling on a motion to intervene, the court must assess whether intervention would "unduly delay or prejudice the adjudication of the rights of the original parties."  Id.

We review denial of permissive intervention for abuse of discretion, not whether the Rule 24(b)(2) factors are present. Baehr, 80 Hawai'i at 345, 910 P.2d at 116 ("[W]hen we are asked to review a denial of permissive intervention, our task is not to determine whether the factors of Rule 24(b)(2) are present, but it is rather to determine whether the trial court committed an abuse of discretion in denying the motion.").

The circuit court correctly exercised discretion in denying permissive intervention.  Untimeliness supports that ruling. See HRCP Rule 24(b)(2).

Because Subrogating Insurers have no protectable interest in the settlement terms, we also agree with the circuit court that intervention does not "assist in the just and equitable adjudication of any issues between the parties."  See Baehr, 80 Hawai'i at 345, 910 P.2d at 116.

Here, Subrogating Insurers claim an equitable subrogation right derivative of their insureds' claims. This interest, though, does not aid in resolving the lawsuit's central issues: Defendants' liability and whether the settlement is fair, reasonable, and adequate under HRCP Rule 23. See id.

Without a protectable interest, Subrogating Insurers cannot establish a "common question of law or fact." Id. (absent "an interest relating to the property or transaction which is the subject of the action" no common questions exist).

Subrogating Insurers assert that their claims share the "same transactional nucleus of facts." They distort the 24(b)(2) standard. The "transactional nucleus" test comes from Wong v. Cayetano's claim preclusion doctrine, not HRCP Rule 24(b)(2). 111 Hawaiʻi 462, 478, 143 P.3d 1, 17 (2006). We decline Subrogating Insurers' invitation to transplant a claim preclusion standard into the permissive intervention analysis. The permissive intervention standard requires commonality between the applicant's "alleged interest and the main action," not a common nucleus of facts. Baehr, 80 Hawaiʻi at 345, 910 P.2d at 116; see HRCP Rule 24(b)(2) (requiring that "an applicant's claim or defense and the main action have a question of law or fact in common").

Equitable subrogation presents no common questions of law or fact with these tort claims and the class settlement of those

claims.  Because Subrogating Insurers lack a protectable interest (an "interest relating to the property or transaction which is the subject of the action") they cannot demonstrate common questions with the main action.  See Baehr, 80 Hawai'i at 345, 910 P.2d at 116; Maui Fires, 155 Hawai'i at 425, 565 P.3d at 770.

## IV.

We affirm the Circuit Court of the Second Circuit's June 24, 2025 order denying Subrogating Insurers' motion to intervene.

| | |
|---|---|
| Adam M. Romney | /s/ Sabrina S. McKenna |
| (Vincent G. Raboteau, Michael F. O'Connor, Richard A. Ing, Mark | /s/ Todd W. Eddins |
| S. Anderson, Normand R. Lezy, Christine Forsline, David R. | /s/ Lisa M. Ginoza |
| Denton, on the briefs) for appellants | /s/ Kevin T. Morikone |



Terrance M. Revere                    /s/ Taryn R. Tomasa
(Patrick Kyle Smith, Graham B.
LippSmith, MaryBeth LippSmith,
Celene Chan Andrews, Jaclyn L.
Anderson on the briefs)
for appellees
Nova Burnes, et al.

Ginger D. Anders
(Joachim P. Cox, Randall C.
Whattoff, Nicholas D. Fram on
the briefs)
for appellees
Hawaiian Electric Company, Inc.
dba Hawaiian Electric, et al.